Michael S. MILROY, Plaintiff,

v.

John G. HANSON, John F. Hanson, Jerry D. Hanson, Jay Hanson, Defendants,

and

Sixth Street Food Stores, Inc., a corporation, Nominal Defendant.

No. 4:CV94–3012.

United States District Court, D. Nebraska.

Feb. 3, 1995.

David R. Buntain, Lincoln, NE, for plaintiff Michael S. Milroy.

David D. Zwart, Lincoln, NE, for defendants John G. Hanson, John F. Hanson, Jerry D. Hanson and Jay Hanson.

J. Scott Searl, Omaha, NE, for defendant Sixth Street Food Stores, Inc.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The interesting issue presented by this appeal (Filings 134, 136) from Magistrate Judge Piester's order (Filing 128) compelling production of documents is:

> whether a director of a corporation, who is also a minority stockholder, has the right to documents, which are otherwise presumably protected by the attorney-client privilege, when the corporation the director serves asserts the privilege against the director in the context of litigation brought by the director against the corporation and the remaining stockholders and directors wherein the director personally seeks from the defendant corporation and remaining defendants money damages and liquidation of the corporation.

Judge Piester held that the directors of the corporation were the "collective corporate 'client'" for purposes of the attorney-client privilege, (Filing 128, at 11), and the defendant corporation accordingly could not assert the attorney-client privilege against a director. Although I am reluctant to disagree with the magistrate judge's thoughtful opinion, I have concluded that Judge Piester erred as a matter of law when he reached this conclusion. Accordingly, I shall grant

the appeal and remand the matter to Judge Piester for further consideration in accordance with this opinion. My reasons for this decision are set forth in the following portions of this memorandum.

## I. BACKGROUND

Michael S. Milroy (Milroy) sued John G. Hanson, John F. Hanson, Jerry D. Hanson, and Jay Hanson (the "Hanson defendants"). Also named as a "nominal" defendant is Sixth Street Food Stores, Inc. ("Sixth Street"). Milroy is an attorney who resides in Arizona and practices at a large Arizona law firm.

Sixth Street is a closely held Nebraska corporation. It operates grocery stores in west-central Nebraska. At all material times, Milroy owned a minority interest in Sixth Street's stock, and he served and continues to serve as a member of the company's board of directors. At all material times, the Hanson defendants were majority stockholders in Sixth Street, owning the balance of the outstanding and issued stock. Some or all of the Hanson defendants constituted and continue to constitute a majority of Sixth Street's board of directors. There are no "outside" directors; thus, Milroy and some or all of the Hanson defendants constituted and continue to constitute the entire board of directors. Sometime prior to November, 1992, Milroy was treasurer of the corporation, but he has not served as a corporate officer since. All other significant corporate offices have always been and are now held by the Hanson defendants or some of them.

Milroy asserts three causes of action in his amended complaint. (Filing 29.) First, Milroy claims the Hanson defendants have abused the corporation and violated their fiduciary duty to him. Second, Milroy asserts a stockholder derivative suit on behalf of the corporation, claiming, among other things, that the Hanson defendants have wasted the assets of the corporation. Third, Milroy asserts a civil RICO action against the Hanson defendants, claiming they have operated Sixth Street as an unlawful enterprise. Milroy makes various claims for relief: he prays for monetary damages against all defendants, including the corporation; and he also requests that a judgment be entered against the corporation, ordering liquidation of corporate assets.

Milroy sought to obtain through discovery various documents held by either Sixth Street's outside accounting firm or Sixth Street's outside counsel. There has been no showing that Milroy was ever represented by Sixth Street's outside counsel. There has also been no showing that Milroy ever participated in any of the meetings, conferences, or discussions that gave rise to the assertion of the attorney-client privilege. There is no showing that Milroy has offered to review the documents solely in his fiduciary capacity as a director of Sixth Street or that he has otherwise agreed not to use the privileged material to further his personal interests in this litigation.

Although the company produced thousands of documents, Sixth Street has resisted the production of five documents held by its accountants and 96 documents held by its lawyers on the basis that these documents are protected by the attorney-client privilege. Sixth Street submitted to the court and all counsel so-called privilege logs and affidavits detailing the date each document was prepared, the party who prepared it, the subject matter of the document, the location of the document, the nature of any objection to production, and to whom the documents were distributed. (Filing 126.)

After Sixth Street refused to produce the requested documents, Milroy filed various motions to compel. (Filings 74–75.) Sixth Street responded by seeking a protective order. (Filing 79.)

Judge Piester ruled that Sixth Street could not assert the attorney-client privilege against Milroy, "assuming *arguendo*" that the "requirements of the attorney-client privilege have been satisfied" because Milroy, "as a director of Sixth Street, is a part of the collective corporate 'client' who holds and controls the corporation's attorney-client privilege, and thus the privilege cannot be invoked against him as it could against an outsider." (Filing 128, at 10.) Judge Piester relied primarily upon two cases for his conclusion: *Harris v. Wells*, 1990 WL 150445, at 4 (D.Conn.1990), and *Kirby v. Kirby*, 1987

WL 14862 (Del.Ch.1987). Judge Piester also found indirect support for his analysis in *Gottlieb v. Wiles,* 143 F.R.D. 241, 247 (D.Colo.1992).

## II. DISCUSSION

■ It is undisputed that corporations, like people, are entitled to the benefits of the attorney-client privilege under both federal law and Nebraska law. *Compare Commodity Futures Trading Comm. v. Weintraub,* 471 U.S. 343, 348–49, 105 S.Ct. 1986, 1990–91, 85 L.Ed.2d 372 (1985) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)) *with* Neb.Rev.Stat. § 27–503(1)(a) & (3) (Reissue 1989).

Milroy asks the court to adopt an exception to this general rule. He argues that the corporation should not be entitled to assert the privilege against him (1) because he is a director of the corporation and thus belongs to the entity which controls the corporation, or (2) because he is a stockholder who has initiated a stockholder derivative suit that presumably will benefit the corporation. I am not persuaded by either argument.

### A. MILROY AS DIRECTOR

Since a corporation is not a natural person, its affairs are conducted in accordance with the laws that provide for the creation of corporations. *Weintraub,* 471 U.S. at 348 n. 4, 105 S.Ct. at 1991 n. 4. (discussing who could waive the privilege for a corporation and noting that "[s]tate corporation laws generally vest management authority in a corporation's board of directors"). In this case, the applicable law is Nebraska law.

■ Under Nebraska law the affairs of a corporation are run by its board of directors. Neb.Rev.Stat. § 21–2035(1) (Reissue 1991) ("All corporate powers shall be exercised by or under the authority of and the business and affairs of a corporation shall be managed under the direction of a board of directors...."). When there is a dispute between directors, under Nebraska law the majority decision of the directors governs what the corporation will or will not do. Neb.Rev.

Stat. § 21–2040 (Reissue 1991).[1] In this case, the majority of the directors of Sixth Street, who are all defendants herein, have determined (at least informally) to assert the attorney-client privilege against Milroy on behalf of the corporation.

Under normal circumstances, the majority decision of the board of directors would seem to end the matter because "for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Weintraub,* 471 U.S. at 348, 105 S.Ct. at 1991. It is "control" of the corporation which counts. The United States Supreme Court has recognized that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* at 349, 105 S.Ct. at 1991.

Therefore, since the majority decision of the board of directors of a Nebraska corporation "controls" the corporation under Nebraska law, it follows that an individual director is bound by the majority decision and cannot unilaterally waive or otherwise frustrate the corporation's attorney-client privilege if such an action conflicts with the majority decision of the board of directors.

However, Judge Piester reasoned that because Milroy was a member of the board of directors of Sixth Street at all pertinent times, Milroy essentially became the "client," albeit one part of "the collective corporate 'client.'" Thus, the judge reasoned that the privilege, belonging as it did to the client, could not be asserted against the "client." The cases relied upon by Judge Piester for this proposition are all based upon a Delaware chancery court's opinion known as *Kirby v. Kirby,* 1987 WL 14862 (Del.Ch.1987).

In *Kirby,* the court was confronted with a dispute between four siblings over control of a charitable foundation. Plaintiffs, three of the siblings, claimed to be among the directors of the foundation. They sued their brother Fred, admittedly a director, other defendants who claimed to be directors, and

---

1. The articles of incorporation may require a greater number than a majority. *Id.* There is no showing that Sixth Street's articles of incorporation required a greater number.

the F.M. Kirby Foundation. The foundation was a nonstock, nonprofit corporation. Plaintiffs sought to compel production of documents. The F.M. Kirby Foundation asserted the attorney-client privilege in response to the effort to compel production.

There were two periods of time at issue. *Id.* at 7. The first period of time was when the plaintiffs were admittedly directors of the corporation (prior to August 13, 1986), and the second period of time (after August 13, 1986) was when the plaintiffs ostensibly had been removed, unlawfully it was claimed, as directors. *Id. Kirby* thus involved documents produced both when plaintiffs were and were not directors.

With regard to the time period when the plaintiffs were directors, the issue pertinent to this case, the court reasoned that the "directors are all responsible for the proper management of the corporation, and it seems consistent with their joint obligations that they be treated as the 'joint client' when legal advice is rendered to the corporation through one of its officers or directors." *Id.* This proposition was stated without citation to any authority.[2]

In *Harris v. Wells,* 1990 WL 150445, at 4 (D.Conn. Sept. 5, 1990), another case relied upon by Judge Piester, the court was confronted with a suit involving a Delaware corporation. The facts of the case are not set forth with any clarity in the court's opinion, and "[f]amiliarity is presumed with the convoluted factual and procedural background behind these consolidated lawsuits...." *Id.* at 1.

In any event, *Harris v. Wells* seems to involve a suit where one group of directors sued a corporation and a sole director. *Id.* at 3–4. The defendant director was also an attorney for the corporation. Plaintiffs, as directors, sought to compel production from the defendant director. *Id.* When this *one* director sought to assert the attorney-client privilege against the other directors, the court, relying upon *Kirby,* concluded that the sole director could not assert the privilege against the other plaintiff directors. *Id.* at 4.

Judge Piester also cited *Gottlieb v. Wiles,* 143 F.R.D. 241, 247 (D.Colo.1992). In that case, a former director, who had previously been chief executive officer and chairman of the board, sought production of documents in a suit against the corporation he once served. Relying upon *Kirby,* the court found that the attorney-client privilege could not be asserted against the former director. The court reasoned that the situation in *Gottlieb* was analogous to a situation where parties with a common interest retain a single attorney but later become adverse. The court observed that neither party in that situation is permitted to assert the attorney-client privilege against the other. Thus, the *Gottlieb* court reasoned that the present board of directors should not be permitted to assert the privilege against a former member of the board.

With all due respect, cases like *Kirby, Harris,* and *Gottlieb* make a fundamental error by assuming that for a corporation there exists a "collective corporate 'client'" which may take a position adverse to "management" for purposes of the attorney-client privilege. There is but one client, and that client is the corporation. *Weintraub,* 471 U.S. at 348, 105 S.Ct. at 1990. This is true despite the fact that a corporation can only act through human beings. As the Supreme Court has stated, "for solvent corporations" the "authority to assert and waive the corporation's attorney-client privilege" rests with "*management.*" *Weintraub,* 471 U.S. at 348–49, 105 S.Ct. at 1991 (emphasis added). A dissident director is by definition not

---

**2.** With regard to the second time period during which the plaintiffs were not directors, the Delaware court reasoned that the attorney-client privilege was not absolute because the suit in *Kirby* was intended to "promote[] the interests of the corporation and all of its constituents by determining those who are properly empowered to manage the corporation...." *Id.* at 8. Accordingly, the court ordered that the documents produced after the plaintiffs were ousted should be submitted to the judge for *in camera* inspection to determine whether the plaintiffs could show "good cause" for production of the documents under the rationale of *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). *Id.,* 1987 WL at 7–8. As will be discussed more fully later, *Garner* held that it is permissible to pierce the corporate attorney-client privilege in stockholder class-action suits if the class shows "good cause," measured by various factors, for production of the documents.

"management" and, accordingly, has no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of "management."

It is undisputed that as the majority of the board of directors, the Hanson defendants or some of them are "management." Accordingly, Milroy has no right to frustrate the attorney-client privilege in the face of opposition from Sixth Street's management. A number of cases have recognized this principle in a wide variety of circumstances. *See, e.g., In re Braniff, Inc.*, 153 B.R. 941, 945 (Bankr.M.D.Fla.1993) (absent a specialized showing, former directors and officers were not entitled to documents when privilege asserted by corporation); *Tail of the Pup, Inc. v. Webb*, 528 So.2d 506 (Fla.Dist.Ct.App.1988) (individual stockholder who was also officer and director had no authority to waive or assert the privilege against the wishes of the corporation's board of directors); *In re Estate of Weinberg*, 133 Misc.2d 950, 509 N.Y.S.2d 240, 242–43 (1986), *aff'd sub nom., In re Beiny*, 132 A.D.2d 190, 522 N.Y.S.2d 511 (1987) (officer of a corporation had no claim to see corporation's privileged materials or to waive the privilege); *Hoiles v. Superior Ct.*, 157 Cal.App.3d 1192, 204 Cal.Rptr. 111 (1984) (corporation's attorney-client privilege properly asserted against minority shareholder and director).

Five concluding comments are appropriate. I turn to those observations now.

First, both sides presented good policy arguments regarding the attorney-client privilege and why their respective positions should be adopted. However, those arguments are beside the point. The relevant substantive law defines how corporations function, and such law dictates who may assert, waive, or frustrate the privilege. Whether the purposes behind the attorney-client privilege would be enhanced or degraded by expanding or decreasing the class of

individuals who can assert, waive, or frustrate the corporation's privilege is irrelevant because, as the Supreme Court noted in *Weintraub*, 471 U.S. at 348 n. 4, 105 S.Ct. at 1991 n. 4, for solvent corporations it is necessary to focus on "state corporation law" to answer the question. Simply put, once it is determined that a corporation has the attorney-client privilege, judicial policy choices regarding the attorney-client privilege cannot and should not trump the legislatively enacted substantive law of corporations regarding the rights of corporate "management."

Second, this is not a case predicated upon Nebraska corporate law regarding whether Milroy, as a member of Sixth Street's board of directors, has some right to examine corporate documents in his role as a corporate director. He has filed suit, in major part, to benefit himself. He does not contend that under Nebraska corporate law he has some entitlement to documents in his fiduciary role as a corporate director. Furthermore, he has made no showing that he wants the documents to fulfil his fiduciary duty to Sixth Street and all its shareholders, as opposed to using the documents to further his personal goals in this litigation. Accordingly, the attorney-client privilege is properly asserted against Milroy, notwithstanding his position as a director of the corporation. *Hoiles v. Superior Ct.*, 157 Cal.App.3d at 1201–02, 204 Cal.Rptr. 111 (since shareholder had not brought underlying suit for breach of fiduciary duty and to dissolve closely held corporation in his capacity as a corporate director and had not requested information from corporate counsel on a fiduciary basis, attorney-client privilege was properly asserted).[3]

Third, Judge Piester assumed, as do I, that the attorney-client privilege existed as to the specific documents at issue. Nothing I have said is intended to prohibit Judge Piester from determining on remand whether this assumption is valid.

---

**3.** Even if Milroy made such a claim, and even if he had some unknown entitlement to examine corporate documents under Nebraska corporate law, it is likely that Sixth Street would be entitled to a protective order precluding Milroy from using the documents for an improper purpose. *Cf.* Neb.Rev.Stat. § 21–2050 (Reissue 1991) (in order for a shareholder to examine the "books and records of account," "corporate minutes," or "record of its shareholders" maintained by a corporation, the shareholder may be required by corporate management to submit a "written demand stating the purpose" of the examination, and the shareholder is entitled to examine the requested documents only for a "proper purpose").

Fourth, Milroy asserts the so-called crime-fraud exception to the attorney-client privilege. Judge Piester did not reach this issue, and neither do I. Judge Piester will be free to probe this issue upon remand.

Fifth, there is no claim by Milroy that he was as a matter of fact the "joint" client, together with Sixth Street, of outside counsel. For reasons articulated above, I am unwilling to *analogize* to the joint-client situation for purposes of determining who may assert, waive, or frustrate the corporation's privilege. However, should there be evidence that Milroy was *in fact* the joint client of outside counsel, an entirely different situation would be presented. Judge Piester is free to explore this question, if otherwise appropriate, upon remand.

In sum, when viewed from the perspective of the applicable substantive corporate law, Milroy, as a dissident director, has no right to waive or otherwise pierce Sixth Street's attorney-client privilege because he is not the "management" of the corporation and "management" of the corporation, as it has a right to do, asserts the privilege against him.

### B. MILROY AS STOCKHOLDER

■ Relying upon *Garner v. Wolfinbarger*, 430 F.2d at 1100–04, Milroy asserts an alternative argument. He claims he ought to be entitled to the documents since he brought this action at least in part as a stockholder's derivative suit. Thus, Milroy believes that on balance his interest as a representative of all stockholders in the derivative suit outweighs the interests of the corporation in the privilege.

In *Garner*, the United States Court of Appeals for the Fifth Circuit ruled that in a stockholder class-action suit, the class representative could obtain documents over the corporation's claim of attorney-client privilege if the class showed "good cause." *Id.* at 1103. The "good cause" was measured by nine factors. *Id.* at 1104. The *Garner* court reasoned that when stockholders sue a corporation, it may be inappropriate to allow the attorney-client privilege to be asserted against the stockholders because in some circumstances such an assertion would amount to use of the privilege to harm the true owners of the privilege—the stockholders.

I will not follow *Garner* for two reasons.

First, *Garner* has not been adopted by the United States Court of Appeals for the Eighth Circuit. In fact, "*Garner*'s continued vitality is suspect ... even in federal courts." *Hoiles v. Superior Ct.*, 157 Cal.App.3d at 1198–99, 204 Cal.Rptr. 111. Many commentators believe "*Garner* was wrong and ... the attorney-client privilege in shareholder cases should apply just at it does in other litigation." Stephen A. Saltzburg, *Corporate Attorney–Client Privilege in Shareholder Litigation and Similar Cases: Garner Revisited*, 12 Hofstra L.Rev. 817, 840 (1984) (This and other like commentary is cited and discussed in Defs.' Reply Br. at 11–14.). *But see* Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 503(b)[05], at 503–93–98 (1992) (approving *Garner,* but recognizing that the issue is "currently unresolved and troublesome").

In my opinion, *Garner*, adopted as it was prior to the Supreme Court's opinions in *Upjohn* and *Weintraub*, is problematic because (a) it is in effect a lower-court-created exception to the general rule announced by the Supreme Court in *Upjohn* and *Weintraub* that a corporation has the right to assert an attorney-client privilege, and (b) the *Garner* opinion does not focus on the critical issue of "management," as the Supreme Court did in *Weintraub*, and the relevant substantive law of corporations for purposes of determining who may assert, waive, or otherwise frustrate the attorney-client privilege for a solvent corporation. As a result, I am not inclined to adopt *Garner* without clear direction from the court of appeals.

Second, whatever the utility of the *Garner* rationale, it has no applicability where the plaintiff stockholder asserts claims primarily to benefit himself, particularly where such claims will undoubtedly harm *all* other stockholders if successful. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1415–16 (11th Cir.), *modified on other grounds*, 30 F.3d 1347 (11th Cir.1994) (court declined to follow *Garner* because "[t]he plaintiffs ...

seek damages not on behalf of the Union [the defendant], but for their personal benefit at the expense of the Union and its other members"); *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 23 (9th Cir.1981) (because plaintiff sought "to recover damages from the corporation for herself and the members of her proposed class," the court concluded that *"Garner's* holding and policy rationale simply do not apply here").

While it is true that Milroy has asserted a stockholder derivative action in this case, such an assertion does not invoke the *Garner* policy rationale because Milroy's suit is intended primarily to benefit Milroy personally, to the detriment of all remaining stockholders who are defendants. Milroy specifically asserts two claims in his personal capacity, and those claims are directed at both the corporation and the remaining stockholders. Moreover, the derivative suit will not benefit other Sixth Street stockholders because all of the other stockholders are defendants. Thus, the *Garner* policy rationale, whatever its general appeal, is not applicable here.

In summary, Milroy is not entitled to the documents based upon the so-called *Garner* rule because that rule has not been adopted by the United States Court of Appeals for the Eighth Circuit and the rationale for application of the rule is not present because the plaintiff stockholder has sued primarily to benefit himself, to the detriment of all remaining stockholders.

Accordingly,

IT IS ORDERED that:

(1) The appeals (Filings 134, 136) are sustained, and the matter is remanded to United States Magistrate Judge David L. Piester for further proceedings;

(2) Sixth Street's motion for stay pending appeal (Filing 137) is denied as moot.[4]

---

4. The court previously entered a stay pending appeal. (Filing 138.)