72 P.3d 454 (2003)
Ronald T. GENOVA, M.D., Plaintiff-Appellant,
v.
LONGS PEAK EMERGENCY PHYSICIANS, P.C.; Albert H. Colton, M.D.; Herbert Ogden, M.D.; Michael Monahan, M.D.; and Merle Miller, M.D., Defendants-Appellees.
No. 02CA0756.
Colorado Court of Appeals, Div. I.
May 8, 2003.
*458 Anita S. Fiddleman, P.L.L.C., Anita S. Fiddleman, Boulder, Colorado; The Spillman Law Firm, L.L.C., Jason Slade Spillman, Trenton, Missouri, for Plaintiff-Appellant.
Caplan and Earnest, L.L.C., Peter M. Hamilton, Mark B. Wiletsky, Derek Kiernan-Johnson, Boulder, Colorado, for Defendants-Appellees.
Opinion by Judge GRAHAM.
Plaintiff, Ronald T. Genova, M.D., appeals the judgment entered on jury verdicts in favor of defendants, Longs Peak Emergency Physicians, P.C. (LPEP); Albert H. Colton, M.D.; Herbert Ogden, M.D.; Michael Monahan, M.D.; and Merle Miller, M.D., on plaintiff's claims of wrongful discharge in violation of public policy and breach of fiduciary duty. We affirm.
LPEP is a physician-owned professional corporation that provides emergency medical services to Longmont United Hospital. Plaintiff became an employee, shareholder, and director of LPEP in 1993. The individual defendants are shareholders and employees of LPEP.
In July 1999, defendants terminated plaintiff's employment and provided plaintiff with four months severance pay in accordance with his employment contract. LPEP requested the return of plaintiff's stock certificate in exchange for $100 pursuant to the shareholders' agreement, which provided that upon termination for any reason, a shareholder must sell his or her stock to LPEP for $100.
Plaintiff alleged that LPEP wrongfully discharged him in violation of public policy, that LPEP breached its employment contract with him, and that the individual defendants breached their fiduciary duties to him by undermining his standing with Longmont United Hospital and related conduct.
The jury awarded plaintiff $34,944 on his breach of contract claim, but found in favor of defendants on the wrongful discharge and breach of fiduciary duty claims.

I.
We first reject plaintiff's contention that the trial court abused its discretion in excluding evidence of the value of his ownership interest in LPEP and in not instructing the jury that the loss of that value was recoverable in tort.
Contrary to defendants' assertion, plaintiff argued in the trial court that ownership value in LPEP was relevant to prove the damages component of his breach of fiduciary duty claim. The trial court specifically ruled on that issue, finding that loss of value was not relevant to establish damages and not recoverable for breach of fiduciary duty. Thus, we deem this issue to have been sufficiently raised for purposes of appellate review.

A.
Plaintiff first argues that evidence of the value of his purported twenty percent ownership interest in LPEP was admissible and relevant to his breach of fiduciary duty claim. We conclude the trial court did not abuse its discretion because such evidence was irrelevant and would have confused the jury.
We review a trial court's ruling admitting or excluding evidence under an abuse of discretion standard. Hock v. N.Y. Life Ins. Co., 876 P.2d 1242 (Colo.1994). A court abuses its discretion when it rules based on an erroneous application of the law. Wallbank v. Rothenberg, 74 P.3d 413, 2003 WL *459 30427 (Colo.App. No. 01CA1949, Jan. 2, 2003). A trial court's exercise of discretion should not be overturned on appeal unless its ruling was manifestly arbitrary, unreasonable, or unfair. Wallbank v. Rothenberg, supra.
However, a trial court's ruling excluding evidence is reversible error only if a substantial right of a party is affected, that is, if the error substantially influenced the outcome of the case. Devenyns v. Hartig, 983 P.2d 63 (Colo.App.1998).
Under CRE 401, proffered evidence must relate to a fact "that is of consequence to the determination of the action." In essence, the evidence must be legally material to some factual issue in the case. Pennington v. Sears, Roebuck & Co., 878 P.2d 152 (Colo.App.1994).
If the proffered evidence is legally material, its admissibility becomes dependent on whether it has any tendency to make the existence of a consequential fact more probable or less probable than it would be without the evidence, that is, it must be logically relevant. Pennington v. Sears, Roebuck & Co., supra.
The elements of a claim for relief determine whether the challenged evidence relates to a fact of consequence. Damages are a necessary part of establishing a prima facie case of breach of fiduciary duty. Miller v. Byrne, 916 P.2d 566 (Colo.App.1995).
Here, the trial court ruled that the shareholders' agreement, which limits plaintiff's interest to $100 in the event of termination, did not justify the admission of plaintiff's expert testimony that plaintiff owned a twenty percent interest in LPEP worth in excess of $300,000. The court reasoned that allowing evidence of the fair market value of a shareholder's interest would render the shareholders' agreement meaningless. The trial court also found that any determination of LPEP's fair market value would be speculation.
Plaintiff argues that, by precluding evidence of the value of his ownership interest, the court essentially applied an economic loss rule to his claim. In Town of Alma v. AZCO Construction, Inc., 10 P.3d 1256 (Colo.2000), the supreme court held that a party suffering only economic loss from a breach of an express or implied contract could not assert an independent tort claim in the absence of an independent duty giving rise to the tort claim.
There is a distinction between the damages theories available in breach of contract claims and those available in tort claims. Contractual damages are limited to those foreseen by the parties when their bargain was struck. Vanderbeek v. Vernon Corp., 50 P.3d 866 (Colo.2002). This damages calculation, first applied in Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854), assures that contractual liability is limited to mutually allocated risks which were contemplated and foreseeable at the time of contract negotiations.
In contrast, tort damage analysis focuses on the concept of proximate cause and allows recovery of damages that were the particular consequence of the tort. Whether the claimant "reasonably contemplated a particular consequence as the probable result of the tort at the time it occurred is irrelevant." Vanderbeek v. Vernon Corp., supra, 50 P.3d at 871.
Here, the trial court allowed plaintiff to assert his tort claim for breach of fiduciary duty, but plaintiff offered only a theory that sought to compensate him for the loss of something he did not own, namely, a one-fifth interest in LPEP. No other theory of damages was advanced. Plaintiff's equity ownership in LPEP was subject to his right to receive $100 for his stock. Although he was free to offer proof of other damages proximately caused by the breach of fiduciary duty, he did not do so.
The trial court did not apply the economic loss rule and instead allowed plaintiff to put on proof of separate and distinct tort claims. However, the court properly refused to allow proof of a damages theory based on plaintiff's equity ownership because it was contrary to the facts in evidence. The record reflects that plaintiff never had a twenty percent interest in LPEP. Thus, the trial *460 court did not err in precluding evidence of a nonexistent ownership.

B.
Plaintiff further contends that the trial court erred in refusing to instruct the jury that loss of assets or property is recoverable in tort. We disagree.
A trial court has a duty to instruct the jury correctly on the law applicable to the case. A party is entitled to a jury instruction if it is supported by the evidence and consistent with the existing law. Devenyns v. Hartig, supra.
Although the Colorado Civil Jury Instruction Manual includes loss of assets or property as damages that may be recoverable for a breach of fiduciary duty, here, the trial court instructed the jury that in determining damages for that claim, it could consider:
1. Any noneconomic losses or injuries which plaintiff has had or will probably have in the future, including: pain and suffering, inconvenience, emotional stress, and impairment of the quality of life; and,
2. Any economic losses which plaintiff has had or will probably have in the future, including:
a. Anything of value or any profit the defendants, Colton, Ogden, Monahan or Miller, received as a result of the breach of fiduciary duty; and
b. Any loss of profits and/or income which plaintiff could reasonably have expected to earn had the fiduciary duty not been breached.
Based upon the record, plaintiff's claim could only have resulted in economic damages based upon loss of future earnings as a continuing employee. He did not suggest that he had been defrauded in connection with the shareholders' agreement or proffer any other reason why the shareholders' agreement did not properly fix the value of his interest. In fact, before trial, defendants prevailed on summary judgment on plaintiff's claim that the shareholders' agreement should be reformed to reflect an oral agreement granting him an increased equity ownership. Thus, the jury instruction was proper and conformed to the evidence.

C.
Plaintiff next argues that the trial court erred in refusing to instruct the jury that loss of assets or property is recoverable on a claim for wrongful termination in violation of public policy. We are not persuaded.
Economic damages for wrongful discharge are limited to back pay, loss of future pay, loss of benefits, and related economic losses proximately resulting from the discharge. Economic damages are appropriate to "put the wrongfully discharged employee in the same position he ... would have been in had the employer not breach[ed] the employment contract." Decker v. Browning-Ferris Indus. of Colo., Inc., 947 P.2d 937, 940-41 (Colo.1997)(quoting Decker v. Browning-Ferris Indus. of Colo., Inc., 931 P.2d 436, 447 (Colo.1997)).
The trial court properly instructed the jury that:
If you find in favor of the plaintiff, you must determine the total dollar amount of plaintiff's damages, if any, that were caused by the wrongful discharge of the plaintiff by defendant.
In determining such damages, you shall consider the following:
1. Any noneconomic losses or injuries which plaintiff has had or will probably have in the future, including: pain and suffering, inconvenience, emotional stress, and impairment of the quality of life; and,
2. Any economic losses or injuries which plaintiff has had, including lost back wages, consisting of the difference between the wages plaintiff would have earned between the time he was fired and August 1, 2001, had he not been wrongfully discharged, less the amount he was able to earn through other employment or work.
Lost back pay is intended to make the plaintiff whole.
Thus, because economic damages for wrongful discharge do not include loss of assets or property, it was not error for the trial court to refuse to give plaintiff's proposed jury instruction.

*461 II.
Plaintiff next contends that the trial court erred in ruling that LPEP could invoke the attorney-client privilege against him as to communications between counsel to LPEP and other directors and officers during plaintiff's tenure as a director and officer of LPEP. We find no error.
Some procedural background is necessary to place this issue in perspective. In the trial court, plaintiff sought to disqualify LPEP's counsel, who had entered their appearance on behalf of LPEP and the individual defendants. Before the hearing on that motion, plaintiff served a subpoena duces tecum upon counsel, directing them to bring to the hearing "all documents, correspondence and other items contained in defense counsel's LPEP file, from the inception of LPEP's relationship with defense counsel through LPEP's termination of plaintiff's employment on November 26, 1999."
The motion to disqualify urged that counsel were necessary witnesses at trial because they had been provided specific information regarding: (1) the validity of plaintiff's actions, on behalf of LPEP and their assistance regarding the formation of Boulder County Physicians Advisory Council (BCPAC); (2) the reasons for LPEP's termination of plaintiff's employment; (3) LPEP's minute and record-keeping practices and, specifically, defense counsel's advice regarding, and role in, these practices; and (4) defense counsel's negotiation, on behalf of LPEP, of a compensation agreement between LPEP and the hospital.
LPEP argued that its counsel should not be disqualified because the information plaintiff sought was protected by the attorney-client privilege.
In its order, the trial court concluded that defense counsel were not necessary witnesses because their anticipated testimony either was protected by the attorney-client privilege and therefore inadmissible or concerned matters about which they had no knowledge. The trial court reasoned that LPEP, and not the individual directors, held the attorney-client privilege and that such privilege could be asserted against plaintiff, a former director, even with respect to information shared with corporate counsel during plaintiff's tenure.

A.
We reject defendants' contention that we should not address the merits of the attorney-client privilege issue on appeal because plaintiff is not appealing the refusal to disqualify, but is instead arguing that he was denied discovery which he never sought to compel.
Although plaintiff never served discovery requests related to the privileged documents, he served a subpoena duces tecum upon defense counsel.
In its order denying the disqualification of defense counsel, the trial court essentially made a discovery ruling when it determined that LPEP could invoke the attorney-client privilege against plaintiff and quashed the subpoena, making plaintiff's further discovery attempts futile.
We conclude that the attorney-client privilege issue was sufficiently raised in the trial court, and the adverse ruling provides a sufficient basis for appeal.

B.
We do not perceive error in the trial court's ruling that the attorney-client privilege may be asserted by a corporation against a former director.
"An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment...." Section 13-90-107(1)(b), C.R.S.2002.
The privilege is "rooted in the principle that candid and open discussion by the client to the attorney without fear of disclosure will promote the orderly administration of justice." Law Offices of Bernard D. Morley, P.C. v. MacFarlane, 647 P.2d 1215, 1221 (Colo.1982)(quoting A. v. Dist. Court, 191 Colo. 10, 22, 550 P.2d 315, 324 (1976)). Protecting confidential communications between an attorney and a client "not only facilitates the full development of facts essential to *462 proper representation of the client but also encourages the general public to seek early legal assistance." Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Court, 718 P.2d 1044, 1047 (Colo.1986).
Despite the strong policy reasons that give rise to it, the attorney-client privilege is not absolute, and when the social policies underlying the privilege conflict with other prevailing public policies, the attorney-client privilege must give way. Law Offices of Bernard D. Morley, P.C. v. MacFarlane, supra.
It is well established that the attorney-client privilege attaches to corporations as well as to individuals. The administration of the attorney-client privilege in the case of corporations, however, presents special problems. As an inanimate entity, a corporation must act through agents. Although it is a separate juristic entity, a corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must be undertaken by individuals empowered to act on behalf of the corporation. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).
Consequently, communications between corporate counsel and company personnel are privileged so long as they concern matters within the scope of the employees' corporate duties. Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). An otherwise privileged communication by a lawyer to a corporate agent does not lose its protected status simply because the agent then conveys the attorney's opinion to corporate management charged with acting on such issues. Shriver v. Baskin-Robbins Ice Cream Co., 145 F.R.D. 112 (D.Colo.1992); In re Grand Jury 90-1, 758 F.Supp. 1411 (D.Colo.1991).
Whether plaintiff, as a former officer, director, and shareholder of LPEP, is entitled to privileged documents from LPEP simply because the documents were generated during his tenure is an issue of first impression in Colorado. While we recognize that courts in other jurisdictions are split, we agree with the line of cases concluding that the attorney-client privilege may be established against a former director of a corporation. Accordingly, we hold that the privilege may nevertheless be asserted against plaintiff in this instance and thus discern no error in the trial court's ruling.
Some courts have determined that a corporation may not assert the attorney-client privilege against a former director in such a situation. Gottlieb v. Wiles, 143 F.R.D. 241 (D.Colo.1992); Kirby v. Kirby, 1987 WL 14862 (Del.Ch. July 29, 1987); see also Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir.1970)(in a stockholder class action, the class could obtain documents over the corporation's claim of privilege with a showing of good cause); Neusteter v. Dist. Court, 675 P.2d 1 (Colo.1984)(adopting Garner v. Wolfinbarger, supra, and holding that shareholders are permitted to show that there was good cause not to permit disclosure to be thwarted by the accountant-client privilege, which is analogous to the attorney-client privilege).
In Kirby v. Kirby, supra, the Delaware Chancery Court reasoned that all directors are responsible for the proper management of the corporation and concluded that the attorney-client privilege could not be asserted against a former director.
Gottlieb v. Wiles, supra, relying on Kirby, treated this situation as similar to that where parties with a common interest retain a single attorney to represent them. When those parties later become adverse, no party is permitted to assert the attorney-client privilege as to communications occurring during the period of common interest. Gottlieb v. Wiles, supra.
However, other courts have held that the authority to assert and waive a solvent corporation's attorney-client privilege rests with current management. Commodity Futures Trading Comm'n v. Weintraub, supra; Milroy v. Hanson, 875 F.Supp. 646 (D.Neb.1995); In re Mktg. Investors Corp., 80 S.W.3d 44 (Tex.Ct.App.1998); Lane v. Sharp Packaging Sys., Inc., 251 Wis.2d 68, 640 N.W.2d 788 (2002).
*463 These courts stress that the corporation, and not its individual shareholders or managers, is the client. Commodity Futures Trading Comm'n v. Weintraub, supra; Milroy v. Hanson, supra. See Professional Conduct Rule 1.3.
In Milroy, the court determined that a director and minority stockholder of a corporation has no right to documents otherwise protected under the attorney-client privilege. The Milroy court disagreed with Kirby:
With all due respect, cases like Kirby, Harris [v. Wells, 1990 WL 150445 (D.Conn. Sept. 5, 1990)], and Gottlieb make a fundamental error by assuming that for a corporation there exists a "collective corporate `client'" which may take a position adverse to "management" for purposes of the attorney-client privilege. There is but one client, and that client is the corporation. This is true despite the fact that a corporation can only act through human beings.... A dissident director is by definition not "management" and, accordingly, has no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of "management."
Milroy v. Hanson, supra, 875 F.Supp. at 649-50 (citations omitted).
The Milroy court held that the dissident director "has no right to waive or otherwise pierce [the corporation's] attorney-client privilege because he is not the `management' of the corporation and `management' of the corporation, as it has a right to do, asserts the privilege against him." Milroy v. Hanson, supra, 875 F.Supp. at 651.
We agree with the court's reasoning in Milroy. Although plaintiff's status as a former director would have entitled him to learn privileged information when he was a director, he would then have been duty bound to keep such information confidential. He would not have been entitled alone to assert or waive the privilege on behalf of LPEP. See Commodity Futures Trading Comm'n v. Weintraub, supra.
Now, plaintiff is adverse to LPEP and no longer has a duty to maintain the sanctity of the information; indeed, his expressed intent is to vitiate the privilege and release the documents to a public forum, notwithstanding his fiduciary duty as a former officer and director. In these circumstances, we see no logic in relying upon his former status to now release confidential information to him. Hence, we conclude that the privilege may be asserted against an adverse litigant, and the trial court's same conclusion justified its refusal to disqualify LPEP's attorneys.
This is not a case where defense counsel once represented plaintiff individually, nor is it a case where counsel seeks to use information once shared in confidence by plaintiff against him. The record indicates that all the client information shared and advice given were related solely to the business of the corporate client.
Thus, plaintiff's status as a former director and "dissident" does not entitle him to access defense counsel's files regarding communications with LPEP. The attorney-client privilege belongs to LPEPdefense counsel's clientand only LPEP can waive that privilege. Although a corporate client can act only through its officers, directors, employees, shareholders, or agents, we conclude that a former director cannot purport to act on behalf of the client corporation and waive the attorney-client privilege.

III.
Plaintiff contends that the trial court abused its discretion in denying his motion for a mistrial after one of the defendants testified to certain portions of a settlement letter that the trial court had excluded under CRE 408. Again, we disagree.
A mistrial is warranted when the prejudice created by improper testimony renders the trial unfair to the other party. It is within the discretion of the trial court whether to grant a mistrial, and only if the trial court abuses this discretion will we find reversible error. A court abuses its discretion only when its actions are manifestly arbitrary, unreasonable, or unfair. Margenau v. Bowlin, 12 P.3d 1214 (Colo.App.2000). A trial court can better evaluate any adverse effect that improper testimony might have *464 upon a jury than can a reviewing court. People v. Ned, 923 P.2d 271 (Colo.App.1996).
CRE 408 bars the admission of offers to compromise disputed claims, including evidence of conduct and statements made during the course of compromise negotiations. Nonetheless, exceptions to the rule exist when the evidence is offered for purposes other than proving liability or invalidity of the claim amount, such as "proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Contrary to plaintiff's contention, the list of "other purposes" enumerated in CRE 408 is not exclusive.
Here, the trial court excluded a settlement letter from plaintiff's former attorney pursuant to CRE 408. However, on the sixth day of an eight-day trial, one of the individual defendants, after being questioned why plaintiff did not receive a year-end distribution after he was terminated, testified: "Shortly after the termination letter, we received subsequent correspondence from [plaintiff] that made clear reference to a lawsuit, and to dollar figures that were multiples in excess of... the figure that came out of this formula."
The trial court overruled plaintiff's objection to the reference and reasoned that the purpose of the testimony was to rebut a contention that defendants acted in a willful and wanton manner with regard to terminating plaintiff, which was relevant to plaintiff's request for punitive damages. The statement was made after plaintiff's termination. The trial court further noted that such "passing reference" on the sixth day of trial did not create sufficient prejudice to warrant a mistrial.
There is evidence in the record to support the trial court's findings and conclusions. Accordingly, its determination was neither manifestly arbitrary, unreasonable, or unfair, and thus, it will not be disturbed on review.

IV.
We likewise conclude that the trial court did not abuse its discretion in excluding specific evidence of patient care and limiting plaintiff's expert witness's testimony to the legitimacy of plaintiff's concerns related to patient care.
The Colorado Rules of Evidence grant trial courts the discretion to exclude relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403. In exercising its discretion under this rule, a trial court "must consider the probative value of the proposed evidence ... in light of the nature of the case, the nature of the offered evidence, and the other evidence admitted during the trial." Cherry Creek Sch. Dist. No. 5 v. Voelker, 859 P.2d 805, 811 (Colo.1993)(quoting People v. Rubanowitz, 688 P.2d 231, 245 (Colo.1984)).
As relevant here, to his wrongful discharge claim, plaintiff was required to show, inter alia, that: defendant prohibited him from performing a public duty or exercising an important job-related right or privilege; in violation of a statute relating to the public health, safety, or welfare or a clearly expressed public policy. See Coors Brewing Co. v. Floyd, 978 P.2d 663 (Colo.1999); Martin Marietta Corp. v. Lorenz, 823 P.2d 100 (Colo.1992).
To make that showing, plaintiff asserts that a paramedic notified him of concerns regarding care rendered to an asthmatic patient by one of the defendants. Plaintiff notified another defendant, who was the Quality Improvement Committee (QI) chairperson, of the incident, but, according to plaintiff, neither he nor the paramedic was invited to the QI committee meeting at which the incident was discussed. Plaintiff asserts that he later complained to that defendant about his and the paramedic's exclusion from the process and that this incident contributed to defendants' decision to discharge him.
On cross-examination, plaintiff stated, "The case, in my opinion, just wasn't appropriately investigated. That's the problem. I had no idea whether this was an inappropriate situation or not. It wasn't for me to judge. I did not have all of the information, nor did Dr. Ogden or Dr. Miller or any other *465 member." Plaintiff thus concedes that the issue is not whether proper care was rendered to the patient, but rather whether the QI committee properly investigated the situation.
The trial court repeatedly attempted to limit unnecessary details about the incident, particularly the patient's death, without preventing plaintiff from presenting some context for his concerns. Nevertheless, plaintiff's counsel referred to the patient's death in opening statement, as did plaintiff on direct examination.
The trial court prohibited the paramedic from testifying about the details and outcome of the incident because such testimony could raise medical malpractice issues and could confuse the jury.
On direct examination, plaintiff also testified about his concerns regarding the quality of care rendered by paramedics from the local fire departments and the nurse staffing shortage at the hospital. Plaintiff's expert testified about why these concerns were legitimate.
We agree with the trial court that specific details about patient care are not relevant to the issues in the case. Those details likely would have confused the jury by creating a trial within a trial. Moreover, exclusion of those details was harmless in light of the testimony plaintiff presented regarding quality of care issues. Thus, the trial court's limitation of such testimony was not an abuse of discretion.

V.
Finally, plaintiff contends that the trial court abused its discretion in imposing only monetary sanctions on defendants for introducing at trial nondisclosed evidence of LPEP's 1999 year-end distributions. Plaintiff argues that the court instead should have ordered "a new trial solely on damages at which Defendants shall be prohibited from offering any evidence of 1999 year-end distributions" or should have entered judgment in the amount of $59,000, which, according to plaintiff's expert, was his estimate of the 1999 year-end distribution. We perceive no abuse of discretion.

V.
Plaintiff argues that the evidence unfairly prejudiced his case. Specifically, he contends that he did not accept defendants' offer of settlement for $42,423.33 because he did not have the benefit of the year-end distribution calculations. Plaintiff asserts that he was forced to rely solely on his expert's estimate and could not adequately assess the settlement offer. We are not persuaded that any such prejudice would warrant the sanctions plaintiff requests.
Pursuant to C.R.C.P. 37(c), the trial court may impose appropriate sanctions if a party fails to disclose information required by C.R.C.P. 26(a) or (e), unless such failure was substantially justified or harmless. The burden is on the nondisclosing party to establish that its nondisclosure was substantially justified or harmless. Miller v. Rowtech, LLC, 3 P.3d 492 (Colo.App.2000).
Appropriate sanctions, in addition to payment of reasonable expenses and attorney fees caused by the failure to disclose information, may include:
(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence; [and]
(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
C.R.C.P. 37(b)(2).
Here, plaintiff served discovery upon defendants specifically requesting corporate financial documents, including balance sheets. On the second day of trial, defendants finally provided their exhibit list, which included a balance sheet entitled "Year-end 1999 Distribution Calculation Sheets." Defendants had *466 not produced the document or information before trial.
Over plaintiff's objection, the trial court allowed one of the defendants to use the document to refresh his recollection, and he testified that each shareholder received a 1999 year-end distribution of $47,592.88. The document was not admitted into evidence.
The trial court concluded that allowing defendants to testify from the nondisclosed document was not prejudicial to plaintiff, and, thus, the appropriate sanction for the late disclosure was not to exclude the evidence, which would have left the jury with only estimates as to the actual value of the year-end disbursements, but instead was to allow plaintiff to recover the costs incurred in having to retain an expert to estimate that value.
Plaintiff filed a posttrial motion for sanctions pursuant to C.R.C.P. 37, seeking an order awarding him attorney fees and costs, as well as prohibiting defendants from recovering their costs. The trial court found that defendants' nondisclosure violated C.R.C.P. 26(a) and (e) and awarded plaintiff $11,402 incurred in hiring the expert.
We agree with defendants that the trial court did not abuse its discretion. C.R.C.P. 37 permits the trial court to choose appropriate sanctions, which may include evidence preclusion. However, that sanction is not mandatory.
The judgment is affirmed.
Judge TAUBMAN and Judge PLANK,[*] concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2002.