EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| José Pagán Cartagena, *et al* | |
| :--- | :---: |
| Recurridos | Certiorari |
| v. | 2013 TSPR 102 |
| First Hospital Panamericano, *et al* | 189 DPR ____ |
| Peticionarios | |

Número del Caso: CC-2011-706


Fecha: 19 de septiembre de 2013


Tribunal de Apelaciones:

       Región Judicial de Caguas

Abogados de la Parte Peticionaria:

       Lcdo. Carlos Padilla Vélez
       Lcdo. Pedro Buso García



Abogado de la Parte Recurrida:

       Lcdo. Víctor M. Rivera Torres


Materia: Evidencia- Regla 503 de Evidencia: Alcance del privilegio abogado-cliente en el contexto corporativo.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


José Pagán Cartagena, *et al.*

   Recurridos

      v.

First Hospital Panamericano,
*et al.*

   Peticionarios

CC-2011-0706    Certiorari


Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 19 de septiembre de 2013.

El recurso ante nuestra consideración nos otorga la oportunidad de delimitar el alcance del privilegio abogado-cliente en el contexto corporativo. Nos toca resolver si una conversación sostenida entre un empleado de una corporación y los abogados de ésta, de cara a una potencial demanda en contra de la corporación por parte de terceros, constituye materia privilegiada en un pleito independiente instado por el empleado en contra de la corporación, al amparo de múltiples leyes laborales.

Precisada la controversia pendiente ante esta Curia, pasemos a esbozar el marco fáctico pertinente.

I

El 18 de junio de 2010, el Sr. José Pagán Cartagena ("señor Pagán Cartagena" o "recurrido") presentó una demanda en contra de su antiguo patrono, la corporación First Hospital Panamericano, Inc. ("peticionaria", "First Hospital" o "corporación"), una entidad dedicada a prestar servicios hospitalarios a pacientes de salud mental.[1] El señor Pagán Cartagena instó la referida acción legal tras ser despedido el 23 de junio de 2009, luego de ocupar el puesto de *técnico de salud mental* desde el 15 de febrero de 1989.

El recurrido alegó que su despido se debió a las expresiones que vertió en una reunión sostenida con determinados empleados de la administración de la corporación y los abogados de ésta, quienes interesaban discutir los acontecimientos ocurridos entre el 25 y el 26 de abril de 2009, fecha en la cual una paciente de salud mental se suicidó en una de las instituciones psiquiátricas de First Hospital. Los abogados procuraban conversar con el recurrido por éste haber laborado durante el turno en el cual ocurrió el lamentable suceso y porque sus funciones esa noche, alegadamente, consistían en ofrecer rondas de

---

[1] En su demanda, el señor Pagán Cartagena instó causas de acción al amparo de las siguientes leyes laborales: la Ley Núm. 115-1991, 29 L.P.R.A., sec. 194 *et seq.*, según enmendada; la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185 *et seq.*, según enmendada, conocida como *Ley de Despido Injustificado*; la Ley Núm. 45 de 18 de abril de 1935, 11 L.P.R.A. sec. 1, *et seq.*, según enmendada, conocida como *Ley del Sistema de Compensaciones por Accidentes del Trabajo,* y el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141.

vigilancia en las áreas de cuidado intensivo, lugar en el cual se encontraba internada la paciente indicada.

First Hospital y sus representantes legales buscaban obtener esta información con anticipación a una potencial demanda instada por los familiares de la paciente fallecida en contra de la corporación. El señor Pagán Cartagena alega que en esta reunión les comunicó a los abogados de First Hospital que de ser llamado a testificar ante un Tribunal, de cara a la posible causa de acción mencionada, testificaría sobre la supuesta negligencia de la peticionaria en instaurar medidas de seguridad que hubiesen prevenido el suicidio mencionado.

El 30 de julio de 2010, la corporación contestó la demanda del recurrido. En su contestación, First Hospital argumentó que el contenido de la reunión celebrada entre sus abogados, su personal administrativo y el señor Pagán Cartagena era materia privilegiada y confidencial, por motivo del privilegio abogado-cliente, codificado en la Regla 503 de las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. VI, R. 503.

En respuesta, el 13 de octubre de 2010, el recurrido presentó una moción, en la cual objetó la invocación del privilegio abogado-cliente, realizada por First Hospital al contestar la demanda. En lo pertinente, el señor Pagán Cartagena alegó que el referido privilegio probatorio no era de aplicación al contenido de la reunión antes indicada, ya que el recurrido no era un "cliente", según este término es empleado por la Regla 503 de Evidencia,

*supra*. Concretamente, el recurrido citó la decisión del Tribunal Supremo federal en <u>Upjohn Co. v. U.S.</u>, 444 U.S. 383 (1981), para argüir que, en el contexto corporativo, el concepto "cliente" comprende a los empleados que representan de forma autorizada al patrono corporativo. Según el recurrido, las expresiones que vertió en la reunión no fueron proferidas en representación de la corporación. Al contrario, alegó que sus palabras fueron emitidas como testigo de los hechos que condujeron al suicidio discutido y que los empleados de la administración que asistieron a la reunión eran los verdaderos representantes autorizados de First Hospital, y por ello, los "clientes" contemplados por la Regla 503 de Evidencia, *supra*.

El 22 de noviembre de 2010, la corporación se opuso a la moción del señor Pagán Cartagena. En su oposición, First Hospital descansó en <u>Upjohn Co. v. U.S.</u>, *supra*, para argüir que las conversaciones de sus abogados con el recurrido estaban protegidas por el privilegio abogado-cliente, aunque el señor Pagán Cartagena no fuese un representante de la empresa o parte del grupo de empleados encargados de dirigir las acciones de la corporación ante el asesoramiento legal de sus abogados ("Control-Group").

Luego de examinar los planteamientos de ambas partes, el 1 de diciembre de 2010, el Tribunal de Primera Instancia, sin fundamentar su decisión, proveyó *No Ha Lugar* a la moción del recurrido que objetaba la invocación por la corporación del privilegio abogado-cliente, respecto a las

conversaciones sostenidas entre sus abogados y el recurrido. El 5 de enero de 2011, el señor Pagán Cartagena impugnó esta decisión ante el Tribunal de Apelaciones, mediante la presentación de una petición de *certiorari*. El 21 de enero de 2011, First Hospital presentó su oposición al recurso del recurrido.

Así las cosas, el 31 de marzo de 2011, notificada el 8 de abril de ese año, el foro apelativo intermedio expidió el recurso de *certiorari* presentado por el señor Pagán Cartagena y emitió su dictamen. En éste, el Tribunal *a quo* revocó al foro primario y resolvió que no aplicaba el privilegio abogado-cliente. Según el Tribunal de Apelaciones, aplicar el privilegio privaría al señor Pagán Cartagena de información neurálgica para el éxito de su reclamación laboral en contra de la peticionaria y violentaría su derecho a tener un acceso adecuado a la justicia, entre otras consecuencias legales.

Luego de varios trámites interlocutorios,[2] el 13 de septiembre de 2011, First Hospital presentó ante nos una

---

[2] El 25 de abril de 2011, First Hospital presentó una moción de reconsideración ante el Tribunal de Apelaciones. El 13 de julio de 2011, el foro apelativo intermedio declaró *No Ha Lugar* la moción de reconsideración indicada. Esta decisión fue notificada a las partes, y su notificación archivada en autos, el 21 de julio de 2011. El término para acudir ante nos, mediante recurso de *certiorari*, vencía el lunes 22 de agosto de 2011. No obstante, ese día este Tribunal estuvo cerrado por motivo del paso de un fenómeno atmosférico. Ante ello, First Hospital nos presentó su recurso el 23 de agosto de 2011. El 6 de septiembre de ese año, denegamos una moción de First Hospital, en la que solicitó que su recurso del 23 de agosto fuese aceptado con páginas en exceso del límite dispuesto por nuestro ordenamiento. Ante ello, le concedimos un término de cinco días para que volviese a

petición de *certiorari*. En ésta, la corporación impugna la Sentencia del Tribunal *a quo* y le imputa haber errado por permitir que el recurrido se valga de información privilegiada para instar su causa de acción laboral en contra del patrono. El 9 de diciembre de 2011, esta Curia expidió el auto presentado. Al cabo de varias órdenes procesales, el 30 de abril de 2012, la parte recurrida presentó su alegato en contra de la petición expedida.

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer el marco jurídico aplicable a las controversias pendientes ante nuestra consideración.

II

Nuestro cuerpo de normas probatorias existe con el propósito principal de alcanzar "el descubrimiento de la verdad en todos los procedimientos judiciales". 32 L.P.R.A. Ap. VI, R. 102. Véase, también, Pueblo v. Fernández Rodríguez, 183 D.P.R. 770, 784 (2011), citando a, Pueblo v. De Jesús Delgado, 155 D.P.R 930 (2001). Ante ello, nuestras Reglas de Evidencia "están orientadas hacia la admisión liberal de toda la evidencia pertinente" para la adecuada resolución de una controversia. R. Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño, San Juan, Ediciones Situm, pág. 247 (2010).

No obstante, en ocasiones nuestro ordenamiento evidenciario excluye evidencia pertinente "por consideraciones de política pública, para adelantar valores

_____

presentar su recurso de *certiorari* en conformidad con el límite de páginas impuesto por nuestro reglamento. First Hospital cumplió con el término impuesto.

o intereses sociales ajenos o antagónicos a la búsqueda de la verdad". E.L. Chiesa Aponte, <u>Tratado de derecho probatorio: Reglas de evidencia de Puerto Rico y federales</u>, República Dominicana, Pub. JTS, Tomo I, págs. 185-186 (2009). Véase, también, <u>Ortiz García v. Meléndez Lugo</u>, 164 D.P.R. 16, 28 (2005). Los privilegios evidenciarios constituyen una de estas instancias probatorias. Ello, pues, "por su naturaleza y función, impiden el descubrimiento de ciertos actos, hechos o comunicaciones por existir intereses en conflicto que intervienen con esa búsqueda exhaustiva de la verdad". <u>Pueblo v. Fernández Rodríguez</u>, *supra*, pág. 784; <u>Pueblo v. De Jesús Delgado</u>, *supra*, pág. 939.

El Prof. Ernesto L. Chiesa abunda sobre lo anterior en los siguientes términos:

> Se estima que el sacrificio de evidencia con claro valor probatorio se justifica para adelantar un alto interés público.... Mientras más alto sea el interés público que se quiere adelantar con el privilegio, mayor será su alcance y menor las excepciones al privilegio. Mientras menor sea el interés público que se quiere adelantar, de menor alcance será el privilegio y más las excepciones.... E.L. Chiesa, <u>Reglas de Evidencia de Puerto Rico 2009: Análisis por el Prof. Ernesto L. Chiesa</u>, Pub. JTS, San Juan, págs. 149-150 (2009). Véase, también, <u>Pueblo v. Fernández Rodríguez</u>, *supra*, pág. 784.

Debido a que los privilegios están reñidos con la búsqueda de la verdad, la Regla 518 exige que "las reglas de privilegios se interpret[e]n restrictivamente en relación con cualquier determinación sobre la existencia de

un privilegio".[3] 32 L.P.R.A. Ap. VI, R. 518. Véanse,
también: Pueblo v. De Jesús Delgado, *supra*, pág. 939;
Pueblo en interés del menor L.R.R., 125 D.P.R. 78, 88
(1989); Lugo Ortíz v. Lugo Ortíz, 85 D.P.R. 862, 871
(1962); Tribunal Supremo de Puerto Rico, Secretariado de la
Conferencia Judicial y Notarial, Comité Asesor Permanente
de Reglas de Evidencia, Informe de las Reglas de Derecho
Probatorio, 12 de marzo de 2007, pág. 308. Esta norma
procura "evitar la extensión indebida de los privilegios",
en aras de no atollar la consecución de la verdad en los
procesos judiciales. Rodríguez v. Scotiabank de P.R., 113
D.P.R. 210, 214 (1982). Ante esta exigencia de
interpretación legal, los tribunales vienen obligados a
rechazar cualquier invocación de un privilegio evidenciario
cuando surjan dudas respecto a la presencia de los
requisitos estatutarios exigidos para su existencia. E.L.
Chiesa, Reglas de Evidencia de Puerto Rico 2009: Análisis
por el Prof. Ernesto L. Chiesa, *op. cit.*, pág. 177.

En iguales términos, es imprescindible tener presente
que el peso de demostrar que aplica un privilegio reside en
quien sostiene su existencia, no en la parte contraria. 1
McCormick on Evidence, ed. Kenneth S. Brown, Ed. Thomson-
West, St. Paul, § 73.1, pág. 342 (2006). Los privilegios no
son automáticos; el poseedor del privilegio tiene el deber
de invocarlo **de manera fundamentada en el primer momento** en
que se intente divulgar la comunicación. 3 J.B. Weinsten &

---

[3]La única excepción a esta norma de hermenéutica reside
en aquellos privilegios de rango constitucional. 32
L.P.R.A. Ap. VI, R.518.

M.A. Berger, Weinstein's Federal Evidence, ed. Joseph M. McLaughlin, Ed. Mathew Bender, § 503.20[2], págs. 503-62— 503-63. Quien invoca la existencia de un privilegio tiene el deber de demostrarle al juzgador, con prontitud, todas las razones que convierten la comunicación en privilegiada. 1 McCormick on Evidence, op. cit., §§ 52 y 73.1, págs. 253 y 342. En ese quehacer, el poseedor del privilegio tiene que establecer la existencia de los elementos del privilegio que invoca mediante **preponderancia de la prueba.**[4] Íd., § 6.3.1, pág. 591 y escolio 3.

Teniendo presente los principios generales aplicables a todo privilegio evidenciario, examinemos en detalle los contornos jurídicos del privilegio abogado-cliente.

III.

A.

El privilegio abogado cliente es "el más antiguo de los privilegios que emanan del derecho común" (Pueblo v. Fernández Rodríguez, supra, pág. 785) y "el privilegio no constitucional más sólido de nuestro ordenamiento" legal (R. Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño, op. cit., pág. 265). La justificación para la exclusión de evidencia pertinente por motivo de este privilegio ha variado con el pasar de los años. En sus orígenes, el privilegio abogado-cliente encontró su justificación en la protección del honor de un abogado,

---

[4]Según lo hemos expresado en el pasado, preponderancia de la prueba equivale a que se establezcan "como hechos probados aquéllos que con mayores probabilidades ocurrieron". Zambrana v. Hospital Santo Asilo de Damas, 109 D.P.R. 517, 521 (1980).

quien juraba a su cliente confidencialidad y lealtad. Véase, E.J. Imwinkelried, 1-6B The New Wigmore: A Treatise on Evidence: Evidentiary Privileges, Ed. Aspen Publishers, Austin, § 2.2, pág. 128 (2010). De tal manera, el privilegio existía para facultar al abogado con las herramientas necesarias para poder hacer valer ese código de honor convenido con su cliente y evitar divulgar las confidencias de éste. Íd., § 2.3, pág. 136. Es por ello que el tenedor del privilegio lo era el abogado y era éste el único que podía invocarlo.[5] Íd.

En la actualidad, la razón de ser del privilegio bajo examen está revestida de un carácter utilitarista. Así, el privilegio abogado-cliente procura estimular una conducta social deseada: que el cliente, confiando que sus comunicaciones gozarán de cierto grado de confidencialidad, consulte a un abogado para recibir asistencia legal y le divulgue toda la información necesaria para tales fines. Véanse: 2 M.H. Graham, Handbook of Federal Evidence: Rules 501-615, Ed. Thomson-West, 2006, § 503:1, pág. 57; Íd., § 2.4, pág. 139; Upjohn Co. v. U.S., supra, pág. 389 ("[The attorney-client privilege's] purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."); Fisher

---

[5] Hoy día el poseedor del privilegio abogado-cliente lo es el cliente. E.L. Chiesa, Reglas de Evidencia de Puerto Rico 2009: Análisis por el Prof. Ernesto L. Chiesa, op. cit., pág. 177. E.L. Chiesa, Reglas de Evidencia de Puerto Rico 2009: Análisis por el Prof. Ernesto L. Chiesa, op. cit., pág. 151. Véase, también, Pueblo v. Fernández Rodríguez, supra, págs. 786-787.

v. U.S., 425 U.S. 391, 403 (1976) ("As a practical manner, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice.")

Específicamente, el privilegio abogado-cliente se justifica a la luz de tres consideraciones básicas de política pública. Weinstein's Federal Evidence, *op. cit.*, § 503.03[1]; 1 McCormick on Evidence, *op. cit.*, § 87, pág. 387. En primer lugar, se presume que "el derecho es complejo y para que los miembros de la sociedad puedan cumplir con el mismo en el manejo de sus asuntos y en la disposición de sus controversias, ellos requieren la asistencia de abogados expertos". (Traducción nuestra.) 1 McCormick on Evidence, *op. cit.*, § 87, pág. 387. En segundo plano, "un abogado no puede descargar esta función sin el máximo conocimiento posible respecto a los hechos relacionados a la situación del cliente". (Traducción nuestra.) Íd. Finalmente, "no se puede pretender que el cliente coloque al abogado en plena posesión de los hechos sin la seguridad de que el abogado no será compelido, sobre las objeciones del cliente, a revelar las confidencias en corte". (Traducción nuestra.) Íd.

A la luz de estas consideraciones generales, pasemos a examinar la fuente del privilegio abogado-cliente y los elementos esenciales que configuran un caso *prima facie* para la adecuada invocación del mismo.

B.

Los privilegios evidenciarios encuentran su génesis en la Constitución, la ley o en las Reglas de Evidencia. Pueblo v. Fernández Rodríguez, *supra*, pág. 783. En el caso particular del privilegio abogado-cliente, éste nace de la Regla 503 de nuestras Reglas de Evidencia. De tal manera, la Regla 503 (b) codifica el privilegio evidenciario indicado al proveer lo siguiente: "el o la cliente –sea o no parte en el pleito o acción– tiene el privilegio de rehusar revelar, y de impedir que otra persona revele, una comunicación confidencial entre ella y su abogada o abogado". 32 L.P.R.A. Ap. VI, R. 503 (b).

Según lo explica el profesor Rolando Emmanuelli Jiménez, el privilegio abogado-cliente "pretende proteger la confidencialidad de las comunicaciones entre los abogados, abogadas y sus clientes que estén relacionadas a alguna gestión profesional y basadas en la confianza de que no serán divulgadas más allá de lo necesario para llevar a cabo sus fines". R. Emmanuelli Jiménez, Compendio de derecho probatorio puertorriqueño, Ediciones Situm, San Juan, pág. 102 (2012). Cónsono con esta explicación, el profesor Wigmore resumió los elementos esenciales del privilegio abogado-cliente de la siguiente manera: (1) cuando se procure un consejo legal de cualquier naturaleza; (2) de parte de un abogado, actuando en su capacidad como tal; (3) las comunicaciones hechas relacionadas a ese propósito; (4) en confidencia; (5) por un cliente; (6) estarán protegidas permanentemente a sus instancias; (7) de

ser divulgadas por él o su abogado; (8) excepto cuando haya renunciado a tal protección. 8 J. Wigmore, Evidence, Ed. McNaughton § 2292, pág. 554 (1961), según fue citado en E. Selan Epstein & M.M. Martin, The Attorney-Client Privilege and the Work-Product Doctrine, American Bar Association, Litigation Section, págs. 13-14 (1989). Véase, también, 2 Federal Rules of Evidence Manual: Rules 405-608, ed. S.A. Saltzburg, M.M. Martin & D.J. Capra, Ed. Mathew Bender & Co., § 501.02[5][b] (2011).

Los tratadistas, al descansar en la definición del profesor Wigmore, han concluido que **no importa cómo se defina el privilegio abogado-cliente, su contenido se reduce a proteger aquella comunicación confidencial que haga un cliente o su representante autorizado a un abogado con el fin de obtener asistencia legal.** Véanse: E. Selan Epstein & M.M. Martin, *op. cit.*, pág. 14; Weinstein's Federal Evidence, *op. cit.*, § 503.10. **Estos son los elementos esenciales que el poseedor del privilegio abogado-cliente -privilegio de naturaleza absoluta- debe probar por preponderancia de la prueba para establecer un caso *prima facie*, respecto a la aplicabilidad del privilegio abogado-cliente.** The New Wigmore: A Treatise on Evidence: Evidentiary Privileges, *op. cit.*, § 6.3, pág. 588. Si así procede, prosperará en su reclamo de que determinada comunicación no sea divulgada y admitida como evidencia en un procedimiento judicial. Íd.

Una vez establecido lo anterior, **la aplicabilidad del privilegio sólo podrá ser derrotada si se cumple con una de**

**las siguientes condiciones: (1) que el poseedor del privilegio renunció al mismo, o (2) que aplique alguna de las excepciones que limitan el alcance de un privilegio probatorio.** Íd. Por el contrario, si los elementos de un caso *prima facie* no son establecidos, entonces no cabe hablar sobre la renuncia de un privilegio o la aplicabilidad de una excepción a éste.

Nuestras Reglas de Evidencia concuerdan con este acercamiento. Es por ello que la Regla 503 (a) provee definiciones claras para los términos *abogado*, *cliente*, *representante autorizado* y *comunicación confidencial*, por éstos constituir el contenido mínimo de un caso *prima facie* para la invocación del privilegio abogado-cliente. Además, nuestro ordenamiento legal también reconoce la posibilidad de que una parte renuncie de forma tácita o explícita a un privilegio evidenciario (32 L.P.R.A. Ap. VI, R. 517), o que el privilegio no aplique por motivo de una de las excepciones contenidas en la Regla 503 (c) de nuestra Reglas de Evidencia (32 L.P.R.A. Ap. VI, R. 503 (c)).

Examinada la fuente del privilegio abogado-cliente y los elementos necesarios para un caso *prima facie* para la invocación exitosa del privilegio, pasemos a analizar las definiciones pertinentes al caso de marras que son provistas por la Regla 503 (c) para los conceptos *cliente*, *representante autorizado* y *comunicación confidencial*. Ello, dentro del ámbito corporativo, por ser ese el contexto en

el cual se desarrollan los hechos ante nuestra consideración.[6]

IV.

A.

En primer lugar, la Regla 503 (a) define la voz *cliente* como aquella "[p]ersona natural o **jurídica** que, directamente o a través de **representante autorizado**, consulta a una abogada o a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional...". (Énfasis suplido.) 32 L.P.R.A. Ap. VI, R. 503 (a) (2). A su vez, esta Regla establece que el término *representante autorizado* significará aquella "[p]ersona facultada para obtener servicios legales o actuar a base de consejo legal ofrecido, en representación de la que es cliente. **Incluye a una persona que, con el**

_____

[6]Como cuestión de umbral, es preciso tener presente que el Tribunal Supremo federal ha establecido explícitamente que el privilegio abogado-cliente aplica en el contexto corporativo. Upjohn Co. v. U.S., 449 U.S. 383, 390 (1981), citando a, U.S. v. Louisville & Nashville R. Co., 236 U.S. 318, 336 (1915). Véanse, también: The New Wigmore: A Treatise on Evidence: Evidentiary Privileges, *op. cit.*, § 6.9.1, pág. 865 ("Modernly, there is virtual unanimity that the privilege applies to corporate entities."); 1 McCormick on Evidence, *op. cit.*, § 87.1, pág. 392; E. Selan Epstein & M.M. Martin, *op. cit.*, pág. 25 ("There is no longer any question that the attorney client-privilege may be asserted by a corporation or other organization; it is not restricted to individuals."); Weinstein's Federal Evidence, *op. cit.*, § 503.22 ("... there is overall agreement that corporations as clients are entitled to the benefits of the lawyer-client privilege.") Nuestra Regla 503 de Evidencia es cónsona con esta perspectiva y, según lo expresa el informe del Comité Asesor que laboró en su adopción, su contenido codifica la decisión del Tribunal Supremo federal en Upjohn v. U.S., *supra*, en múltiples aspectos. Informe de las Reglas de Derecho Probatorio, *op. cit.*, pág. 227. De tal manera, es propio concluir que en Puerto Rico las corporaciones tienen derecho a invocar oportunamente el privilegio abogado-cliente.

**propósito de que se brinde representación legal a quien es cliente, hace o recibe una comunicación confidencial mientras actúa dentro del alcance de su empleo con el o la cliente"**. (Énfasis suplido.) 32 L.P.R.A. Ap. VI, R. 503 (a) (3).

Según se deduce de las definiciones señaladas, un cliente puede ser una persona natural o una persona jurídica. A su vez, el cliente puede actuar por sí mismo, o a través de un representante autorizado. Ahora bien, cuando el alegado poseedor del privilegio lo constituye una persona jurídica, como lo es una corporación, existen consideraciones adicionales que dificultan precisar quién es el representante autorizado del cliente corporativo para fines de determinar si aplica o no el privilegio abogado-cliente.

Estas dificultades surgen de la naturaleza particular de una entidad corporativa, la cual opera de forma distinta a un individuo. Weinstein's Federal Evidence, *op. cit.*, § 503.22[1]. Contrario a una persona natural, quien constituye una sola entidad en comunicación directa o representativa con su abogado, la persona jurídica debe descansar en sus oficiales y empleados para comunicar a su representante legal aquellos elementos necesarios para una asesoría jurídica competente. Véanse: (Citaciones internas omitidas.) Weinstein's Federal Evidence, *op. cit.*, § 503.22[1] ("While an individual client is generally the sole source of disclosure to an attorney, 'a corporate client may employ many spokesmen -from upper management to

blue collar employees- in order to communicate relevant information to counsel'."); 1 McCormick on Evidence, *op. cit.,* § 87.1, pág. 392; J.E. Sexton, A Post-Upjohn Consideration of the Corporate Attorney-Client Privilege, 57 N.Y.U. L. Rev. 443, 449 (1982).

El Tribunal Supremo federal ha explicado esta diferencia en los siguientes términos:

> Admittedly complications in the application of the privilege arise when the client is a corporation, which in theory is an artificial creature of the law, and not an individual.... In the case of the individual client the provider of the information and the person who acts on the lawyer's advice are one and the same. In the corporate context, however, it will frequently be ... [the company's employees who] will possess the information needed by the corporation's lawyers. (Citaciones internas omitidas.) Upjohn Co. v. U.S., *supra,* págs. 389-390 y 391.

Ante esta particularidad, los tribunales han enfrentado la difícil tarea de precisar qué tipo de empleado o agente está legitimado a ofrecer comunicaciones en representación de la entidad jurídica, las cuales ameriten la protección del privilegio bajo examen. Véanse: 2 Federal Rules of Evidence Manual: Rules 405-608, *op. cit.,* § 501.02[5][g]; E. Selan Epstein & M.M. Martin, *op. cit.,* pág. 25. Previo a que el Tribunal Supremo federal, en Upjohn Co. v. U.S., *supra,* atendiera la interrogante señalada, existían dos teorías conflictivas que dividían el criterio de los distintos tribunales federales y estatales respecto a qué tipo de empleado podía constituir un representante autorizado de la corporación, cuyas

comunicaciones fuesen acreedoras de las protecciones garantizadas por el privilegio abogado-cliente.

Por un lado, una mayoría de los tribunales descansaban en la prueba del grupo-control ("Control-Group Test"). Esta prueba limita el alcance del privilegio abogado-cliente en el contexto corporativo a las comunicaciones ocurridas entre los abogados de una corporación y aquellos empleados u oficiales de ésta que estén en una posición que les confiera control sobre, o la facultad para participar substancialmente en, la decisión o el asunto para el cual se consulta al abogado de la corporación. City of Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 483, 485 (E.D.Pa. 1962). Véanse: 2 Handbook of Federal Evidence: Rules 501-615, op. cit., § 503:3, págs. 102-103; 1 McCormick on Evidence, op. cit., § 87.1, pág. 392; Weinstein's Federal Evidence, op. cit., § 503.22[2][b].

Así, cuando el empleado no pertenece al grupo de personas encomendadas con la tarea de tomar acción –o participar en una decisión– a base del consejo legal provisto por el abogado de la corporación, entonces la comunicación confidencial sostenida entre el abogado y el empleado de ésta, sobre el asunto para el cual la corporación necesita asesoría legal, no se considera privilegiada, ya que se entiende que el empleado no representa o personifica a la corporación.

Por otra parte, otros tribunales descartaron la prueba del grupo-control, prefiriendo en su lugar la prueba de la materia ("Subject Matter Test"). Bajo este examen se

reconoce que las comunicaciones de un empleado constituyen las expresiones de la corporación, y por ende están sujetas al privilegio abogado-cliente, si: (1) el empleado, aunque no sea un miembro del grupo-control de la corporación, hace una comunicación al abogado de la entidad por instrucciones de sus superiores; y (2) la materia de esa comunicación está relacionada a las responsabilidades y tareas asignadas al empleado. Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487, 491-492 (7mo Cir. 1970);—Weinstein's Federal Evidence, *op. cit.*, § 503.22[2][c]; E. Selan Epstein & M.M. Martin, *op. cit.*, pág. 26 ("The other test focused on the 'subject matter' of the communication, asking whether the communication was for purpose of seeking and rendering legal advice to the corporation, whether the communication was made at the instance of the employee's superior, and whether the subject matter of the communication was within the scope of the employee's duties. If those indicia were present, courts using the subject matter test tended to recognize the privilege, regardless of the corporate rank of the employee making the communication.")

La decisión del Tribunal Supremo federal en Upjohn Co. v. U.S., *supra*, atendió de forma explícita la divergencia de estándares antes explicada. En primer lugar, la Corte federal descartó la prueba del grupo-control como una alternativa viable al momento de interpretar qué empleado constituye un representante autorizado para fines de delimitar el alcance del privilegio abogado-cliente en el contexto corporativo. Upjohn Co. v. U.S., *supra*, págs. 390-

392. El Tribunal federal sostuvo su rechazo de la referida prueba en función de los propósitos para los cuales existe el privilegio abogado-cliente.

Específicamente, el Tribunal Supremo de EE.UU. concibió que limitar el privilegio abogado-cliente a aquellos miembros de la alta gerencia de una entidad corporativa que estuviesen a cargo de tomar decisiones para asuntos por los cuales se consultó al abogado corporativo, frustra los propósitos perseguidos por este privilegio envidenciario, a saber: (1) que el abogado pueda ofrecer un consejo legal informado y competente por causa de que los empleados que poseen la información le divulgan la misma de forma cabal por confiar que sus comunicaciones serán privilegiadas; y (2) que el abogado procure que su cliente corporativo, al estar más informado del estado de derecho pertinente, cumpla con las leyes. Upjohn Co. v. U.S., *supra*, págs. 390-393.

En el caso particular del primer propósito pretendido por el privilegio abogado-cliente —fomentar la comunicación plena y sincera entre el abogado y el cliente— la Corte Suprema federal indicó que el examen del grupo-control lo coarta, ya que: (1) desalienta que los empleados de mediano y bajo rango de la corporación informen al abogado de ésta, aquellos hechos necesarios y pertinentes para la formulación de un consejo legal informado y razonable, por temor a que sus comunicaciones no sean consideradas como materia privilegiada; (2) ignora la realidad de que son los empleados de mediano o bajo rango, y no siempre los

oficiales y agentes encargados de dirigir las acciones de la empresa, quienes poseen la información que necesita el abogado corporativo para una adecuada asesoría legal;[7] (3) coloca al abogado en una disyuntiva peligrosa, pues si entrevista a los empleados que no poseen la más alta autoridad, sus comunicaciones no serán privilegiadas, mas si se limita a sólo entrevistar a los oficiales encargados de dirigir la empresa, encontrará que éstos no poseen la información necesaria para determinar cómo ocurrió el asunto para el cual la entidad jurídica procura asesoría legal; y (4) prescinde considerar que son los empleados de mediano y bajo rango, quienes realmente necesitan el consejo legal adecuado, por ser ellos quienes implementan día a día la política corporativa. Íd., págs. 390-392.

Respecto al segundo propósito perseguido por el privilegio abogado-cliente –que el cliente corporativo

---

[7]El Tribunal Supremo federal ha planteado este aspecto en los siguientes términos:

> "In the case of the individual client the provider of the information and the person who acts on the lawyer's advice are one and the same. In the corporate context, however, it will frequently be employees beyond the control group as defined by the court below –officers and agents responsible for directing the company's actions in response to legal advice- who will possess the information needed by the corporation's lawyers. Middle-level and indeed lower-level employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." Upjohn Co. v. U.S., *supra*, pág. 391.

cumpla con el Derecho- el Tribunal Supremo federal indicó que la prueba del grupo-control lo troncha, por no brindar certeza en torno a qué tipo de comunicaciones serán privilegiadas. Ante ello, el examen rechazado limita la voluntariedad de un empleado corporativo para consultar a su abogado referente a cómo cumplir con el complejo ordenamiento corporativo. Íd., pág. 393.

Habiendo concluido que la prueba del grupo-control no es útil para determinar qué tipo de empleado es un representante autorizado de la corporación para fines del privilegio abogado-cliente, el máximo foro federal fue renuente a adoptar un conjunto de normas que gobierne el alcance del privilegio abogado-cliente en el marco corporativo. Ello, en virtud de la Regla de Evidencia federal Núm. 501, la cual establece que el reconocimiento de un privilegio probatorio debe quedar sujeto a un acercamiento *caso a caso*, consistente con los principios del derecho común, según interpretados por la razón y la experiencia. Íd., págs. 396-397.

A pesar que el Tribunal federal descartó adoptar un estándar para casos como el de marras, éste sí sugirió un análisis semejante en su naturaleza al *Subject Matter Test*. Así, concluyó que **en el caso que tenía ante su consideración** sí aplicaba el privilegio abogado-cliente, ya que: (1) las comunicaciones concernidas fueron vertidas por los empleados de la corporación a su abogado, para el propósito expreso de asegurar asesoría legal para la corporación; (2) las comunicaciones estaban relacionadas

con las funciones y tareas corporativas específicas de los empleados que manifestaron la comunicación en disputa y éstos eran conscientes que estaban siendo consultados por el abogado para que la corporación pudiese ser asesorada; y (3) las comunicaciones fueron tratadas como confidencial por la corporación, por instrucciones de los gerentes de la empresa.[8] Íd., págs. 394-395. Véase, también, 1 McCormick on Evidence, *op. cit.*, § 87.1, pág. 393.

Con esta Opinión en mente, en el 2009 adoptamos nuestra Regla 503 de Evidencia. En su adopción fuimos explícitos en codificar lo resuelto en Upjohn Co. v. U.S., *supra*.[9] Es por ello que añadimos la definición del término

_____

[8]Algunos tratadistas han concluido que la Corte Suprema federal, al resolver Upjohn Co. v. U.S., *supra*, descansó su decisión en Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 609 (8vo Cir. 1978), una decisión del Octavo Circuito para la Corte Federal de Apelaciones de los EE.UU., la cual adopta una versión modificada del "Subject Matter Test", que concluye que un empleado será un representante autorizado de la corporación, y por ende aplicará el privilegio abogado-cliente, siempre y cuando: (1) la comunicación del empleado fue hecha con el propósito de asegurar consejo legal; (2) el empleado efectuó la comunicación por instrucciones de sus superiores corporativos; (3) sus superiores le pidieron que comunicara la información para asegurar determinado consejo legal a favor de la empresa; (4) la materia de la comunicación se encontraba dentro del ámbito de las funciones y responsabilidades corporativas del empleado; y (5) la comunicación no ha sido diseminada más allá de aquellas personas que, por motivo de la estructura corporativa, deben conocer su contenido. Véanse: Weinstein's Federal Evidence, *op. cit.*, § 503.22[4][b]; E. Selan Epstein & M.M. Martin, *op. cit.*, págs. 28-29.

[9]Debido a que la decisión del Tribunal Supremo federal en Upjohn Co. v. U.S., *supra*, no está erguida sobre fundamentos de naturaleza constitucional, la misma no es vinculante para los estados y territorios de la Unión Americana. 1 McCormick on Evidence, *op. cit.*, § 87.1, pág. 393. No obstante, nuestra codificación de este caso en nuestra Regla 503 de Evidencia demuestra la intención

*representante autorizado*, por coincidir con el criterio del Tribunal Supremo federal, a los efectos de que el privilegio abogado-cliente "se extiende a conversaciones entre el abogado o abogada y los representantes y empleados" de la corporación, "si tales comunicaciones resultan pertinentes para asesorar al cliente". Informe de las Reglas de Derecho Probatorio, *op. cit.*, págs. 227-228. Véase, también, R.E. Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño, *op. cit.*, pág. 267.

El profesor Ernesto Chiesa confirma lo anterior. Es por ello que expresa que nuestra Regla 503 (a), al definir el término *representante autorizado*, adoptó "una interpretación extensiva del concepto 'cliente', compatible con lo resuelto en *Upjohn Co. v. U.S.*, [*supra*], en relación con el alcance de 'cliente' cuando es una corporación". E.L. Chiesa, Reglas de Evidencia de Puerto Rico 2009: Análisis por el Prof. Ernesto L. Chiesa, *op. cit.*, pág. 151. Como resultado de lo anterior, "[l]a comunicación, para que sea privilegiada, no tiene que ser entre el abogado y las altas esferas de la corporación. Es suficiente con que la comunicación sea con una persona que tiene información importante para el asesoramiento". Íd.

A la luz de todo lo expresado, y en resumidas cuentas, podemos concluir que **en Puerto Rico no aplica el estándar del grupo-control ("Control Group Test")**. Ello, en función de nuestra codificación expresa del caso Upjohn Co. v.

_____

manifiesta de que su contenido aplique en nuestra jurisdicción legal.

U.S., *supra*, en nuestra Regla 503 (a). Consecuentemente, el privilegio abogado-cliente no está limitado a las comunicaciones vertidas por los oficiales y empleados de las altas esferas de la corporación encargados de diseñar la política corporativa. Al contrario, hoy adoptamos el estándar sugerido en el caso federal nombrado, el cual se asemeja a la prueba de materia ("Subject Matter Test"). Así, **un empleado será un *representante autorizado* del *cliente* (la corporación), siempre y cuando: (1) sus comunicaciones fueron ofrecidas al abogado corporativo para el propósito expreso de asegurar asesoría legal para la corporación; (2) las comunicaciones estaban relacionadas con las funciones y tareas corporativas específicas del empleado y éste era consciente que estaba siendo consultado por el abogado para que la corporación pudiese ser asesorada legalmente; y (3) sus comunicaciones fueron tratadas de forma confidencial por la corporación, por instrucciones de los gerentes de la empresa.**

Al adoptar expresamente el estándar señalado, procuramos cumplir con el texto de nuestra Regla 503 (a), el cual define el término *cliente* como aquella persona jurídica que entabla una comunicación confidencial con su abogado, a través de su *representante autorizado*. A su vez, honramos la letra de nuestra Regla 503 (a) (3), la cual define el término *representante autorizado*, en lo pertinente, como aquella persona que, **"con el propósito de que se brinde representación legal a quien es *cliente* [(la corporación)], hace o recibe una comunicación confidencial**

**mientras actúa dentro del alcance de su empleo con el o la cliente**". (Énfasis suplido.)

Según se deduce de estas definiciones, encontramos todos los elementos del estándar que hoy adoptamos. En primer lugar, el representante autorizado emite su comunicación con el fin de asegurar una asesoría legal en beneficio del cliente (la corporación). En segundo plano, el contenido de la comunicación está dentro del alcance de las funciones y responsabilidades del empleo del representante autorizado con la corporación, y son emitidas para que esta última sea asesorada. Tercero, la comunicación ha sido tratada -y continúa siendo tratada- como confidencial por la empresa, porque así lo han ordenado los superiores corporativos del empleado.

Más aún, el estándar aquí acogido -distinto a la prueba del grupo-control- cumple con los principios de política pública, perseguidos por el privilegio abogado-cliente, según los hemos detallado. Ello, pues, procura proteger aquellas comunicaciones sostenidas entre el abogado y los empleados de una empresa, no en función de su rango corporativo, sino por causa de la relación existente entre el contenido de la comunicación confidencial, las responsabilidades corporativas del empleado comunicador y el interés de sus superiores por que la información que tenga el empleado llegue a los oídos del abogado, en aras de garantizar una asesoría legal cabal en beneficio de la empresa. A su vez, honramos el historial de nuestras Reglas

de Evidencia y velamos por la vindicación de su letra clara.

Teniendo claro qué implican los términos *cliente* y *representante autorizado* en el contexto corporativo, expliquemos el contenido mínimo del requisito de que la comunicación vertida sea una confidencial.

B.

Según adelantado, para que aplique el privilegio abogado-cliente respecto a determinada comunicación, el que invoca el privilegio debe probar, entre otros factores, que la comunicación fue emitida con carácter *confidencial*. Ortiz García v. Meléndez Lugo, *supra*, pág. 28 ("la exclusión de prueba basada en los privilegios responde a la 'confidencialidad ... para proteger al titular del derecho'.") (Citaciones internas omitidas.) Nuestra Regla 503 (a) (4) define el término *comunicación confidencial* como "[a]quella habida entre una abogada o un abogado y su cliente en relación con alguna gestión profesional, **basada en la confianza de que no será divulgada a terceras personas, salvo a aquéllas que sea necesario para llevar a efecto los propósitos de la comunicación**". (Énfasis nuestro.) 32 L.P.R.A. Ap. VI, R. 503 (a) (4).

De esta manera, **la definición antes reproducida nos ilustra ciertos elementos indispensables para que una comunicación sea confidencial en su naturaleza, a saber: (1) que ocurra una comunicación entre el abogado y el cliente; (2) cuyo contenido se relacione a una gestión profesional (entiéndase, que constituya un asesoramiento**

**sobre materia legal); (3) que la comunicación sea divulgada bajo la creencia o confianza razonable de que no será divulgada a terceras personas; (4) salvo aquellas personas que necesitan la información para el más cabal asesoramiento legal.** Véanse: E.L. Chiesa, <u>Reglas de Evidencia de Puerto Rico 2009: Análisis por el Prof. Ernesto L. Chiesa</u>, *op. cit.*, pág. 151; R.E. Emmanuelli Jiménez, <u>Prontuario de derecho probatorio puertorriqueño</u>, *op. cit.*, pág. 267. Enfoquemos nuestra mirada sobre las implicaciones jurídicas de estos últimos dos requisitos.

Como norma general, "[l]a presencia de terceras personas que nada tienen que ver con el asesoramiento legal es indicio de que no hay expectativa de confidencialidad". E.L. Chiesa, <u>Reglas de Evidencia de Puerto Rico 2009: Análisis por el Prof. Ernesto L. Chiesa</u>, *op. cit.*, pág. 151. Ello, pues, el elemento esencial para la confidencialidad -sépase, la **intención** de que la comunicación no sea divulgada a terceros fuera de la relación de asesoramiento legal- está ausente. 2 <u>Handbook of Federal Evidence: Rules 501-615</u>, *op. cit.*, § 503:4, págs. 124-126 ("Matters intended to be disclosed ... are not within the privilege.... **[I]ntent to disclose is of critical concern**....") (Énfasis nuestro.)

El professor Weinstein abunda sobre lo anterior en los siguientes términos:

> The lawyer-client privilege applies only when the communication is confidential. A communication is confidential when the circumstances indicate that **it was not intended to be disclosed** to third persons other than (1) those to whom disclosure

is in furtherance of the rendition of legal services to the client, or (2) those reasonably necessary for the transmission of the communication. **Confidentiality is defined by the client's intent. If the client intended the matter to be made public, the requisite confidentiality is lacking, and the privilege does not apply**. (Énfasis suplido.) Weinstein's Federal Evidence, *op. cit.*, § 503.15 [1] y [2].

Al examinar el texto de la Regla 503 (a) (4), encontramos que *no* **se considerarán como** *terceros* **a los siguientes sujetos: (1) el abogado, (2) el cliente y (3) aquellas personas que necesitan la información para el más cabal asesoramiento legal**. Este tercer grupo de personas es catalogado por la doctrina como los *agentes* del abogado o del cliente. Véanse: Weinstein's Federal Evidence, *op. cit.*, § 503.15[3]; 2 Federal Rules of Evidence Manual: Rules 405-608, *op. cit.*, § 501.02[5][e][i].

En el caso particular del abogado, no serán considerados como *terceros* aquellos empleados del abogado que resultan esenciales para el ofrecimiento de un asesoramiento legal cabal al cliente. A modo de ejemplo, la presencia de secretarias, intérpretes, abogados asociados, paralegales, y otros agentes imprescindibles para adelantar la gestión de asesoramiento legal perseguida por el cliente, no destruye el privilegio abogado-cliente. Weinstein's Federal Evidence, *op. cit.*, § 503.15[3].

En iguales términos, el cliente puede descansar en agentes para comunicarse con el abogado. A esos efectos, aquellos empleados de una corporación que constituyan representantes autorizados de ésta, no resultan ser personas adicionales al abogado y al cliente, cuya

presencia destruya el carácter privilegiado de la comunicación. E. Selan Epstein & M.M. Martin, *op. cit.*, pág. 43. Ello, pues, la divulgación a estos individuos es imprescindible para lograr los propósitos del privilegio abogado-cliente, sépase: (1) la provisión de una asesoría legal cabal e informada; y (2) que la empresa esté lo suficientemente informada como para cumplir con las exigencias del Derecho.

Ahora bien, ¿qué ocurre cuando un agente-específicamente un representante autorizado del cliente-quien está legitimado a tener acceso a la comunicación del cliente para adelantar los propósitos de brindarle asesoría legal, se ve obligado a utilizar la comunicación para vindicar sus derechos frente al cliente? ¿Acaso el cliente puede invocar el privilegio abogado-cliente en contra del agente, a pesar de que este último participó y conoce el contenido de la comunicación confidencial? La respuesta es **no.**

Como bien explicamos anteriormente, una comunicación es confidencial porque el poseedor del privilegio tiene **la intención** de que su conversación con sus abogados, ya sea por sí o a través de sus agentes, **no sea divulgada a terceros**. Siempre y cuando el cliente **tenga la intención** y vele por que **un tercero** no conozca el contenido de su comunicación con su abogado, ésta continúa gozando del manto de la confidencialidad.

No obstante, ya hemos establecido que los agentes del cliente y del abogado no son terceros para fines de

determinar si una comunicación es confidencial. Como resultado, ellos pueden tener acceso al contenido de la comunicación sin que ésta pierda su carácter de confidencialidad. Ahora bien, si el abogado o un agente intentaren divulgar el contenido de la comunicación a un tercero sin la aprobación del cliente, el cliente puede invocar oportunamente el privilegio abogado-cliente y detener tal divulgación.[10] Mientras el cliente tenga la intención de que la comunicación no sea divulgada a terceros, nadie puede contravenir sus designios.

Sin embargo, cuando un agente -como lo constituye un representante autorizado- interesa utilizar la comunicación confidencial para vindicar sus derechos de cara al cliente en un caso que sólo involucre a estas partes, otro resulta ser el caso. Ante un escenario como éste, los tratadistas sostienen que es inaplicable el privilegio abogado-cliente. Lo anterior se debe a que no existe **intención** del cliente de excluir al agente del contenido de la comunicación. 1 McCormick on Evidence, *op. cit.*, § 91.1, pág. 412. En otras palabras, entre ellos no hay confidencialidad que proteger, pues no hay terceros ajenos al propósito por el cual se profirió la comunicación.

Los tratadistas **asemejan** esta circunstancia particular a los casos en los cuales dos o más personas consultan a un abogado de forma conjunta, cada cual teniendo un interés

---

[10]Incluso, ya hemos establecido en el pasado que tal divulgación por parte del abogado puede constituir una violación de los Cánones de Ética Profesional y acarrear serias sanciones disciplinarias. Véase, Pueblo v. Fernández Rodríguez, *supra*, págs. 791-796 y 807-808.

particular en algún asunto. (Énfasis suplido.) 1 <u>McCormick</u> <u>on Evidence</u>, *op. cit.*, § 91.1, pág. 412. ("where a client calls into the conference with the attorney one of the client's agents, **and matters are discussed which bear on the agent's rights against the client**, it would seem that in a subsequent controversy between client and agent, the limitation on the privilege accepted in **the joint consultation cases should furnish a controlling analogy**.") Al amparo de esta **analogía**, cuando un agente del cliente (i.e. un representante autorizado de una empresa) participa en una comunicación con el fin de asegurar asesoría legal para el cliente, la comunicación del agente con el abogado, aunque conocida por el agente y el cliente, será confidencial en cualquier controversia que pueda surgir entre el agente o el cliente, o ambos, frente a un tercero. Íd., pág. 411. Ahora bien, cuando el agente se encuentre en la necesidad de vindicar sus derechos frente al cliente, descansando en el contenido de la comunicación confidencial que los unió al inicio, el privilegio no aplicará. Íd., pág. 411. Ello, pues, ninguno tiene nada que ocultarle al otro respecto a la comunicación en disputa y, por ende, no hay una **intención de confidencialidad entre ambos**. Íd., pág. 412.

Encontramos apoyo a nuestra conclusión en otras decisiones persuasivas vertidas por otras jurisdicciones sobre este mismo asunto. A manera ilustrativa, en <u>Pagano v. Ippoliti</u>, 245 Conn. 640 (1998), una corporación contrató a un empleado llamado Gary Dayton para que se encargara de un

proyecto de construcción que ésta interesaba materializar. Para ese propósito el empleado participó en comunicaciones con los abogados de la corporación en calidad de representante autorizado de ésta. Luego, entre Dayton y la corporación surgieron diferencias en cuanto al progreso de la construcción y el empleado fue despedido. Más adelante, otro empleado despedido, Jeffrey Pagano, demandó a la corporación por los mismos fundamentos por los cuales Dayton fue despedido. En ese pleito, el Tribunal Supremo de Connecticut expresó que cuando un empleado, como representante de la corporación, ofrece comunicaciones al abogado que representa a ésta y luego surge un pleito entre el empleado y la corporación, en el cual las comunicaciones son pertinentes, el privilegio abogado-cliente es inaplicable.[11] Íd., págs. 649-650. Sencillamente, los individuos involucrados en la comunicación no pretendían esconderse lo comunicado. No hay, pues, comunicación secreta entre ellos. Íd., pág. 650. Véanse, también: Inter-Fluve v. Montana Eighteenth Judicial Dist. Court, 327 Mont. 14 (2005); Gottlieb v. Wiles, 143 F.R.D. 241 (D. Colo. 1992).

Al igual que el Tribunal Supremo de Connecticut, la norma que hoy adoptamos responde al entendido prevenido de que un representante autorizado y el cliente, en un pleito instado por aquél contra este último, no tienen nada que ocultarse o mantener en confidencia respecto a las

---

[11]Claro está, las comunicaciones se mantienen privilegiadas ante terceros. Pagano v. Ippoliti, 245 Conn. 640, 649-650 (1998).

comunicaciones que ambos vertieron a un abogado con miras a asegurar asesoría legal para la corporación. Como resultado, no hay una comunicación confidencial entre ellos. Consecuentemente, no existen los elementos necesarios para la invocación exitosa del privilegio abogado-cliente en contra del representante autorizado.

Habiendo expuesto el marco jurídico aplicable al caso de autos, pasemos a resolver la controversia ante nuestra consideración.

V.

En el caso que nos ocupa, First Hospital arguye que cuando el señor Pagán Cartagena ofreció comunicaciones al abogado de la corporación, como parte de una investigación interna en anticipo a un potencial litigio contra los familiares de la paciente fallecida, y luego instó una reclamación laboral en contra de la corporación, en la cual la comunicación es pertinente, el privilegio abogado-cliente impide que el recurrido se valga de esa comunicación para establecer su causa de acción laboral. No le asiste la razón.

Según explicamos anteriormente, el privilegio abogado-cliente impide que se divulgue una comunicación sostenida entre un cliente y su abogado, siempre y cuando el que invoca el privilegio probatorio establezca, por preponderancia de la prueba, que: (1) un cliente -o su representante autorizado-;(2) hizo una comunicación confidencial; (3) a su abogado; (4) con el fin de obtener asistencia legal. A continuación examinamos si First

Hospital —la persona jurídica que invoca el privilegio— probó los elementos mencionados.

De entrada, amerita resaltar que las alegaciones vertidas por ambas partes en sus respectivos escritos a lo largo del tracto judicial, establecen que no existe controversia respecto a que los últimos dos requisitos exigidos para la existencia del privilegio abogado-cliente —entiéndase, (3) que una comunicación fue vertida a un abogado, (4) con el fin de obtener asistencia legal- están presentes en las conversaciones en disputa. En primer lugar, First Hospital y el señor Pagán Cartagena reconocen que los abogados de First Hospital, en su carácter de asesores legales, se comunicaron con el recurrido. En segundo plano, ambas partes sostienen que estas conversaciones ocurrieron para asegurar asesoría legal a favor de First Hospital, de cara a una potencial demanda en contra de la peticionaria instada por los familiares de una paciente fallecida.

Establecido lo anterior, pasemos a analizar si First Hospital cumplió con los restantes requerimientos para invocar el privilegio abogado-cliente, a saber: (1) que el señor Pagán Cartagena es un representante autorizado de la corporación; y (2) que su comunicación a los abogados del cliente (First Hospital) fue manifestada de forma confidencial. Atendamos estas exigencias en el orden indicado.

Como cuestión de umbral, el privilegio abogado-cliente sólo puede aplicar cuando su poseedor —el cliente— o

alguien a su favor, lo invoca oportunamente. De acuerdo a nuestra exposición del Derecho, un cliente puede ser una persona natural o jurídica. En el caso de las personas jurídicas, éstas deben descansar en sus representantes autorizados -sus empleados u oficiales- para poder obtener una asesoría legal, ya que éstos son los poseedores de la información pertinente requerida para tal encomienda. Como resultado de lo anterior, aunque exista un cliente (la corporación), las comunicaciones de éste estarán protegidas por el privilegio abogado-cliente sólo si fueron manifestadas a través de sus representantes autorizados.

Ahora bien, no todo empleado u oficial corporativo constituye un representante autorizado de la empresa, cuyas expresiones confieran al cliente corporativo un derecho a invocar oportunamente el privilegio abogado-cliente. Según detallamos anteriormente, y de acuerdo a las expresiones del Tribunal Supremo federal en Upjohn Co. v. U.S., *supra*, las comunicaciones de un empleado u oficial en representación del cliente corporativo, harán a este último acreedor de las protecciones garantizadas por el privilegio indicado, siempre y cuando se pruebe que: (1) las comunicaciones del empleado fueron ofrecidas al abogado corporativo con el propósito expreso de asegurar asesoría legal para la corporación; (2) las comunicaciones estaban relacionadas con las funciones y tareas corporativas específicas del empleado y éste era consciente que estaba siendo consultado por el abogado para que la corporación pudiese ser asesorada legalmente; y (3) sus comunicaciones

fueron tratadas de forma confidencial por la corporación, por instrucciones de los gerentes de la empresa. Apliquemos este estándar al caso de autos.

En cuanto al primer requisito, ambas partes coinciden en que en la reunión en cuestión, el empleado realizó comunicaciones que serían utilizadas por los abogados para el asesoramiento legal de la corporación. A su vez, las partes concuerdan que el señor Pagán Cartagena era consciente que estaba siendo consultado por el abogado para que la corporación pudiese ser asesorada legalmente. Debido a la ausencia de controversia al respecto, se puede concluir que se cumplió con el primer factor.

Concerniente al segundo requisito, concluimos que ninguna de las partes cuestiona que la comunicación que sostuvo el señor Pagán Cartagena con los abogados de First Hospital estuvo relacionada con los deberes y funciones del primero. Por el contrario, el señor Pagán Cartagena hace referencia en su alegato a su expediente de personal y a cómo "llevó a la atención de la gerencia y de los psiquiatras las deficiencias y riesgos de seguridad que estaban ocurriendo". Alegato del recurrido, pág. 2. Asimismo, en la alegación diez de la demanda, el señor Pagán Cartagena hace un listado de cinco cosas que, a su entender, constituían deficiencias y riesgos de seguridad en su trabajo. Apéndice, pág. 25.

Por su parte, en la alegación once de la demanda se admitió que el señor Pagán Cartagena trabajó el 25 de abril de 2009 de once de la noche a siete de la mañana en el área

de intensivo, donde ocurrió el accidente lamentable que da pie a la reunión posterior. Cónsono con lo anterior, las alegaciones quince a la diecinueve de la demanda van dirigidas a establecer que el incidente lamentable que ocurrió en el área de trabajo del señor Pagán Cartagena se debió a la negligencia exclusiva de First Hospital. Debido a la ausencia de controversia sobre este asunto, podemos decir que se cumplió el segundo factor.

En cuanto al tercer factor establecido en Upjonh Co. v. U.S., supra, el señor Pagán Cartagena aduce que en esa reunión con los abogados también habían otras personas, a saber: "la Directora de Recursos Humanos, Gerente de Calidad, entre otros". Véase Moción objetando privilegio abogado-cliente, Apéndice, pág. 32. Además de esas personas, también se encontraban los otros empleados que trabajaron el turno. Véanse: Demanda, Alegaciones 20 y 21, Apéndice, pág. 8, aceptadas en lo aquí pertinente por la parte demandada en Contestación a Demanda, Apéndice, págs. 20, 51-52.

Sin embargo, a la luz de la doctrina señalada, debemos concluir que las personas a las que hace referencia el señor Pagán Cartagena son claramente agentes de la corporación, necesarios para alcanzar una asesoría legal competente a favor de First Hospital.

A la luz de todo lo anterior, concluimos que el señor Pagán Cartagena era un representante autorizado de la corporación, por entender probados todos los elementos esbozados en Upjohn Co. v. U.S., supra. Por último, nos

corresponde resolver en cuanto al privilegio abogado-cliente si, a su vez, se cumple con el requisito de confidencialidad.

Según lo reseñado en nuestra discusión legal, cuando un agente interesa utilizar una comunicación confidencial para vindicar sus derechos de cara al cliente que representa, no existe confidencialidad alguna que proteger entre el representante autorizado y el cliente corporativo. Ello, pues, el cliente corporativo no tuvo la intención de excluir a su representante autorizado del contenido de la comunicación y, por ende, ninguno tiene nada que ocultarle al otro respecto a la comunicación en disputa. Como resultado, aunque el cliente puede impedir que su representante autorizado divulgue el contenido de la comunicación a terceros ajenos a ella, no puede impedir que éste utilice el contenido de la misma en una causa de acción instada por él en contra de la corporación, con el fin de vindicar sus derechos frente al cliente corporativo.

Ahora bien, somos del criterio que en el pleito que tenemos ante nuestra consideración, en donde un exempleado pretende utilizar comunicaciones alegadamente privilegiadas para fundamentar su causa de acción en contra de First Hospital, al amparo de múltiples leyes laborales, no cabe hablar de confidencialidad alguna.

Conforme a lo discutido, concluimos que en el caso de marras no existe el elemento de *confidencialidad*, exigido por nuestro ordenamiento legal, para que un tribunal

reconozca el privilegio abogado-cliente respecto a determinada comunicación.

## VI.

Por los fundamentos antes expuestos, confirmamos al Tribunal de Apelaciones y resolvemos que en el caso de autos no aplica el privilegio abogado-cliente. Ante ello, devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo a lo aquí resuelto.

Se dictará Sentencia de conformidad.


                              Luis F. Estrella Martínez
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Pagán Cartagena, *et al.*

   Recurridos

        v.                   CC-2011-0706     Certiorari

First Hospital Panamericano,
*et al.*

   Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 19 de septiembre de 2013.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma al Tribunal de Apelaciones y se resuelve que en el caso de autos no aplica el privilegio abogado-cliente. Ante ello, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente con opinión escrita. El Juez Asociado señor Feliberti Cintrón disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Pagán Cartagena, et al.

    Recurridos

       v.

First Hospital Panamericano,
et al.

    Peticionarios

*Certiorari*

CC-2011-0706

La Jueza Asociada señora PABÓN CHARNECO emitió una Opinión disidente.

En San Juan, Puerto Rico, a 19 de septiembre de 2013.

La Opinión que emite hoy una Mayoría del Tribunal se adentra en un mundo imaginario en el que el texto de las Reglas de Evidencia pasó a un segundo plano. Ese texto estatutario se sustituyó por un razonamiento jurídico inventado con el propósito único de anunciar el resultado específico al que la Mayoría forzosamente quería llegar. El proceder que hoy presenciamos es el producto inevitable que se da cuando, a toda costa, existe un deseo de llegar a un resultado particular en un caso sin importar sus consecuencias.

Con este caso, la profesión legal de Puerto Rico es testigo de un Tribunal al que le resultó

antipática la aplicación de un privilegio probatorio, **a pesar del lenguaje claro de las Reglas de Evidencia**, *infra*, y buscó mediante interpretación forzada la manera de no aplicarlo.

Esta Opinión crea una norma histórica en nuestro ordenamiento jurídico. Lamentablemente, me temo que será una norma **notoriamente** histórica tan pronto los efectos de lo que hoy se avala comiencen a repercutir en la práctica de la profesión legal en Puerto Rico. Ante este escenario, me veo obligada a disentir y exponer los escombros que dejó en el camino la Mayoría del Tribunal, mientras buscó la manera de infundirle vida a una "criatura jurídica" que hoy anuncia y deja libre por nuestro ordenamiento. Esa criatura, - "**las Reglas de Evidencia vivas**"- ha quedado libre en nuestro ordenamiento y los estragos que ocasione están por verse.[12]

I

De entrada, es menester mencionar que comparto el criterio de la Opinión mayoritaria en cuanto a que en nuestra jurisdicción aplica la norma que el Tribunal Supremo federal estableció en *UpJohn Co. v. United States*,

---

[12] Los hechos del caso de autos están adecuadamente resumidos en la Opinión del Tribunal. Sin embargo, debo resaltar que la etapa procesal en la que se encuentra este caso es en extremo temprana. Según consta en autos, la controversia en cuanto a la aplicación del privilegio abogado-cliente **surgió durante la etapa de Contestación a la Demanda**. No surge de los autos que el Tribunal de Primera Instancia haya realizado alguna vista para dilucidar la reclamación del privilegio probatorio. Me preocupa que la Opinión del Tribunal parece hacer abstracción de este hecho y en ocasiones sugiere que en una Contestación a la Demanda el que reclama un privilegio prácticamente tiene que cumplir con un estándar probatorio que va en contra de la naturaleza de las alegaciones en nuestro ordenamiento de procedimiento civil.

449 U.S. 383 (1981). En ese caso el más Alto Foro rechazó el uso del denominado Estándar de Grupo de Control en los tribunales federales para determinar la aplicación del privilegio abogado-cliente en el ámbito corporativo. Por voz del entonces Juez Asociado William Rehnquist, el Tribunal dictaminó que ese estándar era demasiado restrictivo y atentaba contra el libre flujo de información necesario en un ambiente corporativo, particularmente cuando se trata de la búsqueda de asesoramiento legal. En palabras del Alto Foro, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Íd* pág. 390.

Como correctamente discute la Opinión del Tribunal, no hay duda de que en nuestra Regla de Evidencia 503, 32 L.P.R.A. Ap.VI R.503, se adoptó el concepto del privilegio abogado-cliente aplicable al mundo corporativo según se concibió en *UpJohn Co. v. United States*, supra. El Comité Asesor Permanente de Reglas de Evidencia expresó lo siguiente en cuanto al significado de "representante autorizado" según aparece en la Regla:

> [S]e codificó lo resuelto en el caso <u>Up John Co. v. U.S.</u>, donde el Tribunal Supremo Federal resolvió que **el privilegio se extiende a conversaciones entre el abogado o abogada y los representantes y empleados del cliente.** Esta decisión tiene una importancia fundamental en el ámbito de las corporaciones, **ya que extiende el privilegio a los empleados de la corporación si tales comunicaciones resultan pertinentes para asesorar al cliente.** *Informe de las Reglas de*

*Derecho Probatorio*, Comité Asesor Permanente de Reglas de Evidencia, págs. 227-228. (Énfasis suplido).

Otros miembros del Comité también han confirmado esta intención. Así por ejemplo, el profesor Emmanuelli Jiménez ha hecho constar que la definición de "representante autorizado" se adoptó precisamente para codificar lo resuelto en el caso de *UpJohn Co. v. United States,* supra. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, Ed. Situm, San Juan, 3ra ed., 2010, pág. 267. A la misma conclusión ha llegado el profesor Chiesa Aponte. E. Chiesa Aponte, *Reglas de Evidencia de Puerto Rico 2009*, Publicaciones J.T.S., 2009, pág. 151.

Tenemos que concluir entonces que la norma establecida por el Tribunal Supremo federal en *UpJohn Co. v. United States*, supra, no es solo compatible con la Regla 503 de Evidencia, *supra*, **sino que fue la intención expresa del Comité que redactó la regla codificar lo resuelto en ese caso.**

Sin embargo, a pesar de clarificar que los postulados de *UpJohn Co. v. United States*, supra, aplican en nuestra jurisdicción, la Opinión mayoritaria hace malabares jurídicos para no aplicar el privilegio abogado-cliente en el caso de autos. Como veremos a continuación, en este caso se cumplen **todos los requisitos** estatutarios para que aplique el Privilegio Abogado-Cliente que reconoce la Regla de Evidencia 503, *supra*. Además, **no está presente ninguna**

**de las excepciones que se reconocen en esa Regla para impedir la aplicación del Privilegio**.

No obstante, una Mayoría de miembros de este Tribunal concluye que, de todos modos, el privilegio no aplica. De entrada, debo confesar que me asombra la extraña lógica que sustenta los fundamentos que utilizó la Mayoría para llegar a ese resultado. Y es que esa conclusión se anuncia de una manera tan apresurada y cortante que hay que releer en varias ocasiones la Opinión para comenzar a delinear las razones por las cuales se llegó a la conclusión de que en este caso no aplica un privilegio a pesar de que todos sus requisitos se cumplieron. Lamentablemente, eso es lo que ocurre cuando se construyen teorías *ad hoc* para resolver los casos que llegan hasta este tribunal.

**II**

Es un principio axiomático de nuestro ordenamiento que el fin último de los procesos judiciales es la búsqueda y consecución de la verdad. Precisamente para adelantar ese fin se codifican en nuestro sistema las Reglas de Evidencia. Véase Regla 102 de Evidencia, 32 L.P.R.A. Ap. VI R. 102. No obstante, en nuestro ordenamiento también se reconoce la existencia de diversos intereses que requieren protección y que, en ocasiones, pueden ser superiores a la búsqueda de la verdad. La existencia de una serie de privilegios en el derecho probatorio se sustenta en esa realidad.

Como sabemos, un Privilegio es una regla de exclusión que permite que evidencia que podría ser admisible se rechace por razones ajenas a la búsqueda de la verdad. *Ortiz v. Meléndez*, 164 D.P.R. 16, 28 (2005). A diferencia de otras reglas de exclusión, en el caso de los privilegios el valor probatorio de la evidencia sencillamente no se considera. E. Chiesa Aponte, *Tratado de Derecho Probatorio*, Pubs. J.T.S., San Juan, T. I, 2005, pág. 186.

Todos los privilegios en nuestro ordenamiento pueden ser clasificados como **absolutos** o **condicionales**. Un privilegio se denomina **absoluto** porque una vez se cumplen los requisitos que lo constituyen, **los tribunales carecen de discreción para obligar a divulgar la información privilegiada**. E. Chiesa Aponte, *Tratado de Derecho Probatorio*, op. cit., pág. 193. Véase también E.J. Imwinkelreid, *The New Wigmore: Evidentiary Privileges*, Ed. Wolters-Luwer, 2da Ed., 2010, pág. 168.[13] *A contrario sensu*, los privilegios se clasifican como **condicionales** porque su aplicación puede ceder ante intereses sociales, aun cuando se cumpla con los requisitos que lo constituyen. Según el profesor Chiesa Aponte, ese es el caso de privilegios como el de información oficial y el de secretos de negocio. E. Chiesa Aponte, *Tratado de Derecho Probatorio*, op. cit., pág. 193. **Este era el esquema en**

---

[13] Según el professor Imwinkelreid, "[t]he term [absolute] means that if (1) the privilege exists, (2) the privilege applies, and (3) there is no applicable exception to its scope, the opposing party cannot defeat the privilege by an ad hoc, case-specific showing of need for the privileged information." E.J. Imwinkelreid, *The New Wigmore: Evidentiary Privileges*, Ed. Wolters-Luwer, 2da Ed., 2010, págs. 168-169.

**nuestro ordenamiento, hasta que la Mayoría lo trastocó con la decisión que hoy emite.**

Como sabemos, en nuestro ordenamiento la Regla 503 de Evidencia, *supra*, codifica el privilegio abogado-cliente. El apartado (a) de la regla establece los significados de los términos claves que son inexorablemente necesarios al momento de interpretar el alcance del privilegio.

*In limine*, la Regla 503(a)(1) establece que un "abogado" es una persona autorizada para ejercer la profesión legal en Puerto Rico o en cualquier otra jurisdicción. Además, según la propia Regla "[e]s suficiente conque [sic] el cliente razonablemente crea que con quien habla es un abogado, aunque en realidad no lo sea". E. Chiesa Aponte, *Reglas de Evidencia de Puerto Rico 2009*, op. cit., pág. 151.

Por su parte, la Regla establece que un "cliente" es cualquier persona natural o **jurídica** que consulta a un abogado ya sea para contratar sus servicios legales o para obtener consejo en su capacidad oficial. 32 L.P.R.A. Ap. VI R.503(a)(2).

El aspecto más esencial del privilegio abogado-cliente se encuentra codificado en la definición de "comunicación confidencial" que provee la Regla 503(a)(4). Y es en cuanto a este factor que la Opinión mayoritaria se enreda y crea un mundo imaginario para decir que en este caso no se cumplió con esa definición estatutaria.

Según la Regla 503(a)(4), una comunicación será confidencial para propósitos de este privilegio si es una "habida entre una abogada o un abogado y su cliente en **relación con alguna gestión profesional, basada en la confianza de que _no será divulgada a terceras personas_**, salvo a aquéllas que sea necesario para llevar a efecto los propósitos de la comunicación". 32 L.P.R.A. Ap. VI R.503(a)(4) (Énfasis suplido).

De la definición podemos colegir que la comunicación tiene que ser un **asesoramiento legal** procurado por el cliente y tiene que darse con la expectativa de que la comunicación no será **_divulgada a terceros_**, preservando así su carácter de confidencialidad. Emmanuelli Jiménez, _op. cit._, pág. 267. **Es decir, es completamente irrelevante para propósitos de la Regla de Evidencia 503, _supra_, que el que comunica la información y el que la recibe conozcan el contenido de la información.** Lo único que tienen que auscultar los tribunales para determinar si una comunicación es confidencial para propósitos del privilegio abogado-cliente es si las partes tomaron medidas para que lo comunicado no llegue a terceros. Es en ese momento que la comunicación se convierte en "confidencial" para propósitos probatorios.

### III

Pasemos a determinar entonces si los requisitos para que se constituya el privilegio abogado-cliente están presentes en este caso. Como discutimos, nuestro

ordenamiento requiere que para reconocer la existencia del privilegio abogado cliente se cumplan los requisitos siguientes: a) una comunicación confidencial; b) realizada por un cliente; c) a un abogado para d) obtener asesoramiento legal.

Primero, debemos determinar si la comunicación se le llevó a un **abogado** en la situación ante nos. No hay duda de ello, ya que la reunión que generó la controversia de autos se dio ante los abogados que asesoraban a la corporación First Hospital Panamericano (en adelante First Hospital).

Segundo, debemos auscultar si esa comunicación la hizo un **cliente** en este caso. La respuesta a ello es obviamente en la afirmativa, ya que First Hospital es el cliente de los abogados que estaban presentes en esa reunión. Como vimos, nuestra Regla de Evidencia 503, *supra*, permite que el cliente sea un ente con personalidad jurídica. Además, el que realizó la comunicación, el señor Pagán Cartagena, era un representante autorizado de First Hospital, según los requisitos de *UpJohn Co. v. United States*, supra, y según la conclusión de la Opinión mayoritaria.

Tercero, debemos determinar si la comunicación que el cliente expresó a los abogados procuraba **asesoramiento legal.** De los autos del caso queda claro que eso era así, ya que a First Hospital le interesaba recibir información en cuanto a las posibles repercusiones legales de un incidente ocurrido en sus instalaciones hospitalarias.

Cuarto, y medular para la controversia de este caso, debemos determinar si esa comunicación fue **confidencial**. Como hemos visto, la Regla de Evidencia 503(a)(4) dispone que una comunicación será confidencial si las partes que la expresan desean que esta no sea revelada *a terceros*. Repetimos, *a terceros*. O sea, lo que nuestro ordenamiento exige es que las partes tomen medidas para que la información no llegue a entes ajenos a la comunicación. Una vez se determina que las partes tenían esa intención de proteger la comunicación, **esta adquiere el carácter de confidencial para propósitos de la Regla 503 de Evidencia**, *supra*.

En el caso de autos esa intención es clara, ya que lo que se discutió en la reunión entre los abogados de First Hospital y el recurrido de autos se dio en el contexto de un asesoramiento ante una posible reclamación judicial. En todo momento First Hospital ha sostenido que tenía la intención de proteger de terceros lo que se discutió en esa reunión y levantó su reclamo de privilegio desde la Contestación a la Demanda. Además, el recurrido nunca refutó ese hecho ni nos colocó en posición de determinar que First Hospital no manejó la comunicación de manera confidencial. **Incluso, la Opinión mayoritaria reconoce este hecho**. Op. del Tribunal, pág. 41.

Ante este cuadro que consta en autos, es forzoso concluir que se cumplen con **todos** los requisitos que nuestro ordenamiento requiere para que se reconozca un

reclamo de privilegio abogado-cliente. Debemos recordar que en nuestra jurisdicción el privilegio abogado-cliente es uno de carácter **absoluto**, por lo cual una vez se determina que se cumplen los requisitos para constituirlo, **los tribunales carecen de discreción para negar un reclamo bajo la Regla de Evidencia 503,** *supra*. E. Chiesa Aponte, *Tratado de Derecho Probatorio*, op. cit., pág. 193. Véase además M.M. Martin, *Basic Problems of Evidence*, Ed. A.L.I.-A.B.A., Philadelphia, 6ta Ed., 1988, págs. 155-156. Tampoco ostentan discreción para conjurar excepciones *ad hoc* que no estén expresamente codificadas en las reglas de evidencia.

Sin embargo, ya vimos que una mayoría de miembros de este Tribunal concluye que el privilegio abogado-cliente no aplica en este caso. Para ello, la Mayoría confecciona un mundo imaginario en donde coexisten dos (2) teorías mutuamente excluyentes.

Primero, la Opinión Mayoritaria sostiene que el elemento de confidencialidad no está presente en esa situación de hechos porque tanto First Hospital como el recurrido conocen el contenido de lo comunicado. Eso es muy cierto. El problema es que eso no es lo que determina si una comunicación es confidencial **para propósitos de la Regla de Evidencia 503,** *supra*. La Mayoría erró porque aplicó la definición de diccionario de lo que es

"confidencial" a estos hechos, en vez de aplicar el texto de las Reglas de Evidencia.[14]

Ciertamente, por lógica y naturaleza humana cuando dos (2) entes se comunican una expresión, ambos conocen el contenido de esta: entre ellos no hay secreto. Pero la Regla de Evidencia 503, *supra*, establece que para que lo expresado sea "confidencial" solo se requiere que los dos (2) entes tomen medidas para que esa expresión no llegue a oídos de **_terceros_**. El hecho de que ambos sepan lo comunicado no forma parte de la doctrina de derecho probatorio para determinar que una comunicación es "confidencial".

Otros tribunales no han tenido problemas para comprender el significado de lo que es "confidencial" para propósitos del privilegio abogado-cliente. En palabras de un tribunal de distrito federal:

> "Confidential" means that the agency official said or wrote something to a lawyer to secure legal advice with the intention that it not be known by anyone other than the lawyer. **The information is to be protected if one can say that the person who communicated the information never intended it to be disclosed and, but for its disclosure now, it would never have been known.** *Evans v. Atwood*, F.R.D. 1, 5 (D.D.C. 1999). (Énfasis suplido).

---

[14] Bajo la lógica de la Mayoría, cabe preguntarse para qué se codificó la excepción contenida en la Regla de Evidencia 503(C)(3). Esta establece que un pleito entre el cliente y el abogado en el cual se reclamen violaciones a deberes mutuos en la relación abogado-cliente, el privilegio no aplica. Esta excepción es muy sabia, porque ciertamente lo que se comunicaron el abogado y el cliente es de conocimiento mutuo, así que "no hay confidencialidad que proteger". Pero, ¿para qué hace falta tener esa excepción **_textualmente_** en las Reglas de Evidencia, si ahora la Mayoría del Tribunal ha decidido que los privilegios probatorios no aplican cuando "no haya confidencialidad que proteger" en una relación en particular? La norma que pauta este caso convierte a algunas excepciones específicamente codificadas en innecesarias y hasta fútiles.

Increíblemente, una mayoría de miembros de este Tribunal no comprendió el significado de "comunicación confidencial" en el derecho probatorio.

Segundo, y más sorprendente aún, en la misma Opinión mayoritaria se concluye que lo comunicado por Pagán a los abogados de First Hospital, en efecto, ***fue confidencial***. Y es que la Opinión Mayoritaria tiene que concluir eso por obligación porque la "confidencialidad" de la comunicación es uno de los factores del *test* de *UpJohn Co. v. United States*, supra. Es decir, no se puede hablar de un "representante autorizado" para propósitos del *test* formulado en *UpJohn Co. v. United States*, supra, **si no se concluye *ab initio* que una comunicación es** <u>**confidencial**</u>. Véase J.W. Gergacz, *Attorney-Corporate Client Privilege*, Ed. Garland Law Publishing, New York, 2da ed., 1990, pág. 3-13. Es por eso que "[i]f the communication is confidential at the time it was made, **no other issue of confidentiality arises in the development of the privilege**." *Íd*. pág. 3-48. (Énfasis suplido).

El propio estándar de *UpJohn Co. v. United States*, supra, que propone la Mayoría requiere que, <u>**antes**</u> de concluir que un empleado es un "representante autorizado" de un cliente, hay que auscultar si las "**comunicaciones fueron tratadas de forma confidencial** por la corporación". Op. del Tribunal, pág. 37. (Énfasis suplido). Asombrosamente, la Mayoría concluye que, en efecto, las comunicaciones fueron tratadas de forma confidencial por

First Hospital porque tomó medidas para que no se revelaran a terceros. *Íd*. pág. 41. Así que en una misma Opinión, la Mayoría nos dice paradójicamente que la comunicación objeto de este caso tiene carácter de confidencialidad, pero que a la misma vez, no se cumplieron los requisitos de la Regla de Evidencia 503, *supra*, para determinar que una comunicación es "confidencial". **Es decir, para la Mayoría, la comunicación _es_ y _no es_ confidencial.** Este razonamiento es inaudito y, francamente, su lógica se me escapa.

La única forma de explicar este brinco de lógica es si aceptamos que, para propósitos de la Regla de Evidencia 503, *supra*, coexisten dos (2) definiciones de "comunicación confidencial", **a pesar de que el propio texto de la Regla nos provee solo una**. Desconozco bajo qué canon de interpretación estatutaria la Mayoría llegó a ese resultado, a menos que las Reglas de Evidencia "vivas" que adopta la Mayoría permitan ese tipo de coexistencia extraña en una misma Regla.

**IV**

Pero no nos preocupemos, porque como la Mayoría reconoce que su mundo está construido sobre bases frágiles, nos propone entrelíneas una segunda teoría para no aplicar el privilegio abogado-cliente al caso de autos. En ese sentido nos sugiere que los hechos de este caso **"se asemejan"** a los hechos necesarios para concluir que se cumplen con los requisitos de la excepción codificada en la Regla de Evidencia 503(C)(4). Esta establece que cuando

existen dos (2) clientes conjuntos, ninguno de ellos puede levantar el privilegio contra el otro en un pleito entre ellos. Sin embargo, un análisis del texto y la jurisprudencia de esa excepción al privilegio nos demuestra la imposibilidad de aplicarlo a este caso.

De entrada, nótese lo bizarro de la teoría de la Mayoría que estos se ven obligados a conjurar una excepción a un privilegio a pesar de decirnos, *ab initio*, que no se cumplió con uno de los requisitos que lo constituyen. En teoría, la Mayoría no tendría que hablar de excepciones a un privilegio **porque sencillamente este último no aplica, según su lógica**. Tratar de aplicar una excepción en esas circunstancias es un *non sequitur* palmario. Pero en ese mundo imaginario de la Mayoría aparentemente existen excepciones para normas que no aplican.

Pero, para propósitos de este disenso, tratemos de seguir según las reglas de ese mundo. La excepción de clientes conjuntos se encuentra codificada en nuestro ordenamiento en la Regla de Evidencia 503(C)(4). Según esta, la excepción aplica cuando

> [l]a comunicación es pertinente a una materia de común interés para dos o más personas *que son clientes* de la abogada o del abogado, en cuyo caso una de las personas *clientes* no puede invocar el privilegio contra las otras. 32 L.P.R.A. Ap. VI. (Énfasis suplido).

Como es evidente, la excepción es clara en cuanto a que las "personas" que comparten un interés común tienen que ser *clientes* de un abogado. Pero como ya hemos visto,

la propia Regla 503(A)(2) de Evidencia nos impone una definición de "cliente" la cual es:

> *Cliente*: Persona natural o jurídica que, directamente ***o a través de representante autorizado***, consulta a una abogada o a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional. 32 L.P.R.A. Ap. VI. (Énfasis suplido).

Una mera lectura de estas disposiciones es suficiente para revelar la imposibilidad de la aplicación de esa excepción a los hechos del caso de autos. Como podemos observar, en nuestro ordenamiento probatorio **el cliente y el representante autorizado son el mismo ente jurídico.** Por eso no se puede concluir que existen dos (2) entes ***distintos*** cuando se analizan las figuras del "representante autorizado" y el "cliente". En el caso de autos, el cliente claramente es First Hospital en su capacidad corporativa y Pagán es un *alter ego* de First Hospital en su capacidad de representante autorizado. **Sencillamente, no hay dos (2) clientes por lo cual no puede aplicar la excepción de clientes conjuntos.**

Esta interpretación es cónsona con las decisiones de otros tribunales que han evaluado la aplicabilidad de esa excepción a casos corporativos. A manera de ejemplo, en *Milroy v. Hanson*, 875 F.Supp. 646 (D. Neb. 1995) un tribunal de distrito federal rechazó aplicar la excepción ya que consideró que es "a fundamental error assuming that for a corporation there exists a 'collective corporate client' which may take a position adverse to 'management'

for purposes of the attorney-client privilege. **There is but one client, and that client is the corporation.**" *Íd.* pag. 649 (Énfasis suplido). Otro caso que rehúsa aplicar la excepción es *Montgomery v. eTreppid Technologies*, 548 F.Supp.2d 1175 (2008) en el cual se expresó que "[i]t makes sense that the corporation is the sole client. While the corporation can only communicate with its attorneys through human representatives, <u>**those representatives are communicating on behalf of the corporation, not on behalf of themselves as corporate managers or directors**</u>." *Íd.* pág. 1187. (Énfasis suplido). A la misma conclusión se llegó en los casos de *Bushnell v. Vis Corp.*, 1996 WL 506914; *In re Marketing Investors Corp.*, 80 S.W.3d 44 (Tex. App. 1998) y *Genova v. Longs Peak Emergency Physicians*, P.C. 72 P.3d 454 (Colo. App. 2003).

Ante esta situación, los tribunales deberían estar atados por el texto de la Regla de Evidencia 503, *supra*, la cual curiosamente está ausente del análisis de la Mayoría al momento de argumentar que la excepción de clientes conjuntos aplica. Como es evidente, no hay manera de interpretar razonablemente que en estos casos el "representante autorizado" y la "corporación" son dos (2) clientes separados a los cuales les puede aplicar la excepción de clientes conjuntos. Como hemos visto, la definición de "cliente" que dispone la Regla 503(A)(2) de Evidencia **incluye al representante autorizado** y la excepción de clientes conjuntos aplica solo cuando se

trate de dos (2) *clientes*. La Opinión Mayoritaria nos propone que veamos dos (2) clientes en donde solo hay uno (1), sin ni siquiera considerar factores como

> payment arrangements, allocation of decision making roles, requests for advice, attendance at meetings, frequency and content of correspondence, and the like...In addition, the joint client exception presupposes that communications have been "made in the course of the attorney's joint representation of a 'common interest' of the two parties."...The term "common interest" typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest... Thus, the proponent of the exception must establish cooperation in fact toward the achievement of a common objective. *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 461(1er Cir. 2000)(Citas internas omitidas).

¿Qué tipo de control del caso tenía el empleado Pagán? ¿Le daba órdenes a los abogados de First Hospital? ¿Era parte de su compensación laboral el "compartir" representación legal con el Hospital en casos de reclamación legal? ¿Los abogados de First Hospital lo representarían en el futuro pleito en su carácter individual? Pero más importante aún, y asumiendo que existen dos (2) clientes en este caso, ¿cuál es el interés común que tienen Pagán y First Hospital? Ciertamente no puede ser sencillamente "ganar el caso". ¿En realidad existe un interés común entre estos "dos clientes"? ¿No serán en realidad **intereses conflictivos** los que existen entre ambos? Después de todo, si Pagán es demandado en su carácter individual, su defensa ciertamente será que la responsabilidad en daños de este caso es del patrono y no de él. ¿Eso es un interés común que activa la excepción de clientes conjuntos? No

tenemos respuestas claras a estas interrogantes, y la Mayoría se refugió en el silencio.

Tal vez en reconocimiento de lo forzado de sus argumentos, lo que en realidad la Mayoría nos está diciendo es que introdujo en nuestro ordenamiento una **nueva excepción** a la Regla de Evidencia 503, *supra.* Es decir, de hoy en adelante en pleitos entre el representante autorizado y una corporación, el privilegio abogado-cliente sencillamente no aplica. ¿La razón? La Mayoría sostiene que esa nueva excepción "se asemeja" a la excepción de clientes conjuntos. Véase Op. del Tribunal págs. 32-33.

Me resulta difícil comprender cómo este Tribunal puede literalmente **añadir** una excepción a un privilegio probatorio. Con ello se obvian principios básicos de adjudicación y se trastoca el trabajo legislativo y académico que conlleva la elaboración de un cuerpo de Reglas de Evidencia. En muchas situaciones podrían concebirse razones de política pública por las cuales no debería aplicar un privilegio. Para ello, en la fase legislativa del proceso de redacción de las reglas se realizan estudios y se codifican ciertas excepciones. Es muy cierto que en ocasiones dos (2) entes en una relación privilegiada pueden estar en una situación en la que lo comunicado entre ambos no sea secreto para propósitos de un pleito. Ciertamente, en ese escenario reconocer un privilegio probatorio no parecería ser conveniente. Pero

si se prevé esa situación, el legislador puede codificar una excepción al privilegio. Precisamente para eso existen excepciones como las contenidas en las Reglas 504(C)(2) y en la 503(C)(3), en la cual no se reconoce el privilegio si se trata de casos en que se reclaman violaciones de deberes mutuos entre profesionales y sus clientes. En esos casos ciertamente se necesita escuchar lo que ambos entes se comunicaron, lo cual no es secreto para ninguno. **Pero la clave es que las excepciones para esas situaciones están codificadas en las Reglas de Evidencia.** Previo a este caso, en Puerto Rico ningún tribunal podía legislar una nueva excepción porque se "asemejara" a otra. **Ahora parece que sí. Las Reglas de Evidencia "_vivas_" corren libres por nuestro ordenamiento.**

Con todo este nudo que ató la Mayoría para no aplicar un privilegio a una situación que le pareció incómoda, se culminó avalando un razonamiento que parece decir que cuando "algo" es y no es, pero se parece lo suficiente a otro "algo", pues es otro "algo". Lamento que este Tribunal imponga ese tipo de razonamiento en nuestro ordenamiento.

## V

El problema que permea todo el análisis de la Opinión Mayoritaria se debe a que falló en reconocer la naturaleza jurídica de un privilegio absoluto. Como explica el profesor Imwinkelried, "[t]he term [absolute] means that if (1) the privilege exists, (2) the privilege applies,

and (3) there is no applicable exception to its scope, the opposing party cannot defeat the privilege by an ad hoc, case-specific showing of need for the privileged information." E.J. Imwinkelreid, *op. cit.*, págs. 168-169.

Como vimos, un privilegio condicional es aquel que puede ceder a consideraciones de política pública, como por ejemplo, el privilegio de secretos de negocio. Sin embargo, el privilegio abogado-cliente es uno absoluto, por lo que a pesar de lo incómodo que parezca aplicar el privilegio, los tribunales sencillamente no pueden tomar en consideración razones de política pública para no aplicarlo. Esas consideraciones existen en la Opinión que hoy se emite, aunque se tratan de esconder en las fronteras de su mundo imaginario.

Este caso es ejemplo de la incomodidad que pueden crear los privilegios en el derecho probatorio. El reconocimiento de un privilegio conlleva obligatoriamente que evidencia pertinente y que puede abonar a la búsqueda de la verdad quede fuera de los tribunales. No obstante, los tribunales deben ser conscientes que los privilegios tienen una razón de ser: proteger relaciones que como sociedad hemos considerado importantes. En el caso de autos, podría parecer poco simpático determinar que las discusiones de una reunión que pudieron haber causado el despido de un empleado queden fuera de los tribunales. No obstante, una vez se cumplen los requisitos que constituyan

un privilegio, no teníamos discreción para pasar juicio en cuanto a las virtudes o defectos de las razones que sustentan la existencia de ese privilegio.

De hoy en adelante, parece ser que sí existirá esa discreción. **Que no quede duda: hoy el Tribunal Supremo de Puerto Rico convirtió el texto de la Regla de Evidencia 503, supra, en discrecional.** De hoy en adelante, los reclamos de privilegios no solo serán derrotados invocando que no se cumplen sus requisitos o que existe una excepción aplicable, sino que las Reglas de Evidencia "*vivas*" permiten hacer un llamado a la discreción de los jueces para que no apliquen los privilegios probatorios cuando los estimen inconvenientes. Para ello, podrán sentirse en libertad de crear excepciones *ad hoc* o, peor aún, despreciar el texto de las Reglas de Evidencia. Se abrieron las compuertas; el mundo imaginario en donde se resolvió este caso pasó ahora a nuestro ordenamiento jurídico. *It's open season.*

Disiento.


                                    Mildred G. Pabón Charneco
                                         Jueza Asociada